**Sergio MORO and Kahuna, Incorporated, an Indiana Corporation, Plaintiffs–Appellants,**

v.

**SHELL OIL COMPANY, a Delaware Corporation, Defendant–Appellee.**

No. 95–3289.

United States Court of Appeals, Seventh Circuit.

Argued April 11, 1996.

Decided July 29, 1996.

William J. Stevens (argued), Kenneth H. Hanson, Chicago, IL, for Plaintiffs–Appellants.

Douglas C. Crone (argued), Tribler & Orpett, Chicago, IL, Ann Spiegel, Shell Oil Company, Legal Department, Houston, TX, for Defendant–Appellee.

Before BAUER, CUDAHY, and EVANS, Circuit Judges.

BAUER, Circuit Judge.

Sergio Moro and Kahuna, Incorporated sued Shell Oil Company ("Shell") for alleged violations of the Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. § 2801 *et seq.*, the Sherman Act, 15 U.S.C. § 1 *et seq.*, and the Clayton Act, 15 U.S.C. § 12 *et seq.* The district court granted Shell's motion for summary judgment on all claims, and denied the plaintiffs' subsequent motion to alter or amend the judgment. We affirm.

## BACKGROUND

In March 1992, the plaintiffs entered into a lease and dealership agreement with Shell to operate a service station in Gary, Indiana. Moro, the sole owner of Kahuna, Incorporated, accepted responsibility for the daily management of the station and began operating the station on March 2, 1992. From April through August 1992, Moro stopped by the station only sporadically. During that same period, Moro failed to attend several dealer meetings.

In May and June, Shell sent the plaintiffs written notice that Moro's failure to manage the station personally and to attend dealer meetings violated the franchise agreement and amounted to a failure to put forth a good faith effort to carry out the provisions of the franchise. In mid-August, Shell cancelled the plaintiffs' credit line and required that they pay for gasoline with a cashier's check. On August 22, 1992, a Shell representative came to the station and discovered that the station had ceased operating and that the plaintiffs' employees had removed inventory from the station. Four days later, Shell acknowledged in writing the plaintiffs' unilateral abandonment of the station and of their relationship with Shell.

## ANALYSIS

### I. *Summary Judgment*

The district court granted Shell summary judgment on all of the plaintiffs' claims because the plaintiffs failed to offer evidence sufficient to create a genuine issue of material fact and Shell was entitled to judgment as a matter of law. The plaintiffs do not appeal the grant of summary judgment as to their Clayton Act claim. We review the district court's grant of summary judgment on the remaining claims *de novo*.

Before considering the substance of this case, we pause to address some procedural matters. Despite the clear requirements of Federal Rule of Civil Procedure 56(e) and local court rules, the plaintiffs did not counter the facts presented by Shell in support of its motion for summary judgment.

Not only did the plaintiffs fail to file the "Statement of Genuine Issues" required by local court rules, they failed to support their response brief with references to the record as required by Rule 56(e). Instead, the plaintiffs relied on the "Affidavit of Sergio Moro in Opposition to Summary Judgment" to demonstrate a genuine issue of material fact. But the district court refused to consider Moro's affidavit because it contradicted his prior sworn deposition testimony, and the plaintiffs did not offer any plausible explanation for the contradictions. The district court properly accepted the facts as alleged by Shell, and we will do the same for purposes of our *de novo* review. *Russell v. Acme–Evans Co.,* 51 F.3d 64, 67–68 (7th Cir.1995).

### a. *Petroleum Marketing Practices Act*

 The plaintiffs first claimed that Shell terminated their franchise in violation of the PMPA, which limits the circumstances under which a franchisor can terminate a franchise, and requires the franchisor to provide written notice prior to termination. 15 U.S.C. §§ 2802, 2804(b)(1). Under the PMPA, the plaintiffs had the burden of proving that Shell, and not the plaintiffs themselves, terminated the franchise. 15 U.S.C. § 2805(c).

The plaintiffs cited various actions by Shell that allegedly amounted to termination of the franchise: withdrawing $4,964 from the plaintiffs' bank account when only $500 rent was due; cancelling the plaintiffs' line of credit and requiring them to pay for gasoline with a cashier's check; and declaring that the plaintiffs were out of business. The district court found no PMPA violation because Shell did not terminate the plaintiffs' franchise without proper notice, but rather the plaintiffs voluntarily abandoned their business. We agree.

The record establishes that the plaintiffs abandoned the station on or around August 22, 1992. Moro himself admitted this in his deposition testimony, stating that "I stopped operating the station because I didn't no longer have the money to run the station." Furthermore, Shell did not refuse to supply the plaintiffs with gasoline, it merely required them to pay by cashier's check. Although perhaps not as convenient for the plaintiffs as paying on a credit basis, this did not amount to termination of the franchise under the PMPA because the dealer agreement did not require Shell to accept credit.

### b. *Sherman Act*

 The plaintiffs also claimed that Shell violated the Sherman Act by requiring that they lower retail prices of gasoline sold at the station to levels mandated by Shell. In order to state a claim for unlawful price fixing under Section 1 of the Sherman Act, the plaintiffs had to present evidence of an agreement between Shell and another to fix the retail price of gasoline sold at the station. *Monsanto Co. v. Spray–Rite Serv. Corp.,* 465 U.S. 752, 763, 104 S.Ct. 1464, 1470, 79 L.Ed.2d 775 (1984). *See also Serfecz v. Jewel Food Stores,* 67 F.3d 591, 600 (7th Cir. 1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1042, 134 L.Ed.2d 189 (1996).

Here, the plaintiffs alleged that Shell had an agreement with them to fix prices illegally. But the plaintiffs failed to submit evidence of any such agreement with Shell. Indeed, Moro testified at his deposition that he himself determined the retail gasoline prices actually charged at the station. In Moro's own words, "the price [was] one that [he] put on the pump." Furthermore, although the plaintiffs alleged that from March to August 1992, Shell demanded "on a weekly and ongoing basis" that they reduce the retail price of gasoline sold at the station, the plaintiffs' own evidence shows that they reduced the retail price only six times during that period, and that at least some of those price reductions occurred for reasons other than requests by Shell. Indeed, the plaintiffs actually raised the retail price of gasoline nine times during that same time. The evidence indicates that the plaintiffs made their own pricing decisions, and fails to show any agreement between them and Shell to fix prices. The district court properly granted summary judgment for Shell on the plaintiffs' Sherman Act claim.

## II. *Motion to Amend or Alter the Judgment*

 The plaintiffs also appeal the district court's denial of their motion to alter or

amend the judgment in favor of Shell. *See* Fed.R.Civ.P. 59(e). We review the district court's decision for abuse of discretion. *LB Credit Corp. v. Resolution Trust Corp.*, 49 F.3d 1263, 1267 (7th Cir.1995).

■ The plaintiffs asserted in their Rule 59(e) motion that genuine issues of material fact existed as to their PMPA and Sherman Act claims. In support of the motion, the plaintiffs submitted a second affidavit of Moro that contained statements not found in Moro's initial affidavit filed in opposition to Shell's summary judgment motion. The plaintiffs also submitted the affidavits of two service station employees, Patricia Mantia and Raphael Whitehead, as well as a statement of "Genuine Issues of Material Fact."

■ Rule 59(e) allows a party to direct the district court's attention to newly discovered material evidence or a manifest error of law or fact, and enables the court to correct its own errors and thus avoid unnecessary appellate procedures. *Russell v. Delco Remy Div. of General Motors Corp.*, 51 F.3d 746, 749 (7th Cir.1995). The rule does not provide a vehicle for a party to undo its own procedural failures, and it certainly does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to the judgment. *LB Credit Corp.*, 49 F.3d at 1267.

The plaintiffs failed to offer any explanation at all as to why the information contained in the affidavits was not available to them when they opposed Shell's summary judgment motion. Surely Moro himself was available to provide the information contained in the second affidavit at that time. The same goes for Mantia and Whitehead. In short, all of the evidence submitted by the plaintiffs in support of the Rule 59(e) motion was available to them during the summary judgment proceedings. Their attempt to show a genuine issue of material fact by supplementing the record at the Rule 59(e) stage of the proceedings was too little, too late.

## CONCLUSION

For the foregoing reasons, we affirm the district court's orders granting Shell's summary judgment motion and denying the plaintiffs' motion to amend or alter the judgment.

AFFIRMED.