**EDWARD GRAY CORPORATION, an Illinois Corporation, Plaintiff–Appellant,**

v.

**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, a Pennsylvania Corporation, Defendant–Appellee.**

No. 95–3518.

United States Court of Appeals, Seventh Circuit.

Argued May 29, 1996.

Decided Aug. 29, 1996.

Roger B. Harris (argued), Rita M. Alliss, Altheimer & Gray, Chicago, IL, for Plaintiff–Appellant.

John T. Wardrope, Sandra Young (argued), Howard J. Fishman, Purcell & Wardrope, Chicago, IL, for Defendant–Appellee.

Before ESCHBACH, ROVNER, and EVANS, Circuit Judges.

ESCHBACH, Circuit Judge.

Plaintiff–Appellant Edward Gray Corporation ("Edward Gray") brought an action against its insurer, Defendant–Appellee National Union Fire Insurance Company of Pittsburgh ("National Union"), seeking damages for an alleged breach of contract. Edward Gray alleged that National Union, as its insurer, was required to provide and pay for Edward Gray's defense in another lawsuit and had refused to do so. The district court granted summary judgment for National Union, finding that Edward Gray had not established a genuine issue of material fact whether Edward Gray had suffered damages. Because we find that the district court erred in granting summary judgment and in denying Edward Gray's subsequent motion for reconsideration, we reverse and remand.

## I. Facts

Edward Gray was sued in 1993 for approximately $47 million in damages resulting from the collapse of water-pipes at a Northern Indiana Public Service Company power station (the "NIPSCO litigation"). Edward Gray was named as an additional insured in two policies issued by National Union to one of Edward Gray's subcontractors. Edward Gray sought to tender its defense to its insurer, National Union. Edward Gray asked National Union to provide and pay for Edward Gray's defense in the underlying action and National Union allegedly refused. Edward Gray defended the action through its own counsel and eventually won the underlying case on summary judgment. Edward Gray then brought suit against National Union, seeking to recover $250,000 in attorneys' fees and costs that it alleged it had "incurred and personally paid" in defending the NIPSCO litigation.

Following discovery, Edward Gray brought a motion for summary judgment on the issue of liability. Rather than responding to Edward Gray's motion for summary judgment, National Union filed a motion that it labelled a "motion to dismiss." That motion included several exhibits obtained in discovery that were not included in or attached to the complaint. The exhibits indicate that Edward Gray did not personally pay its defense costs and expenses-the costs were actually paid by another one of Edward Gray's insurers, American Contractors Insurance Company ("American Contractors"). National Union argued therefore that Edward Gray's complaint was premature and not ripe for adjudication because Edward Gray could not prove any damages as a result of National Union's alleged breach of contract and because Edward Gray did not seek declaratory relief. In the absence of damages, National Union asserted that Edward Gray had no cause of action.

Edward Gray opposed the motion to dismiss, arguing that the motion lacked a proper procedural basis and that the motion was inappropriate because it contained numerous exhibits that are extrinsic to the complaint. The district court, however, treated the motion to dismiss as a motion for summary judgment and ordered entry of judgment in favor of National Union.

Edward Gray then filed a Rule 59(e) motion for reconsideration and attached to that motion various exhibits, supported by an affidavit, showing that Edward Gray's retrospective premiums under the American Contractors insurance policy have in fact increased and that Edward Gray paid the premiums, thereby establishing the damage element that the district court previously had found to be lacking. The court denied the motion for reconsideration for two reasons. First, it found that the exhibits were improper because they could have been submitted at the time of the motion for summary judgment.

Second, the court found that even if it accepted the documents, they failed to satisfy the damages element of the claim because any increases to Edward Gray's premiums were interim adjustments. Edward Gray appeals.

## II. Jurisdiction

Before we may address the merits of this appeal, we must resolve a dispute over jurisdiction. National Union argues that Edward Gray's Notice of Appeal was untimely, thereby depriving this court of jurisdiction to decide the appeal. A timeline of the filings is necessary to flesh out the jurisdictional issue. The following events occurred in 1995:

July 20   The district court entered judgment for National Union.

July 31   Edward Gray filed a Rule 59(e) motion for reconsideration and alteration of judgment, tolling the time for filing its notice of appeal, pursuant to Fed. R.App.P. 4(a)(4)(C).

August 4   Edward Gray filed a motion for leave to amend its original 59(e) motion together with the amended motion Edward Gray proposed to file.

August 22   The district court issued a minute order, providing: "Plaintiff's motion for leave to amend its motion for reconsideration is granted. Plaintiff's first motion is moot. The Court will rule on plaintiff's amended motion for reconsideration by mail."

September 20   The district court denied Edward Gray's amended Rule 59(e) motion.

October 20   Edward Gray filed its Notice of Appeal.

The jurisdictional arguments in this case are relatively straightforward. National Union argues that the district court's August 22 order stating that "Plaintiff's first motion is moot," constituted a denial of the motion for reconsideration and triggered the 30 days for Edward Gray to file a Notice of Appeal pursuant to Federal Rule of Appellate Procedure 4. Thus, Edward Gray's October 22 Notice of Appeal would be untimely and this court would have to dismiss the appeal for lack of jurisdiction.

Edward Gray argues that the district court's August 22 order granting the motion for leave to amend meant that the time to appeal did not begin to run until the court ruled on Edward Gray's amended motion for reconsideration. The district court's statement that "plaintiff's first motion is moot" was not a denial of the motion, but an observation that the court need not grant *or* deny the unamended motion. Edward Gray argues that its Notice of Appeal was filed within 30 days of the district court's ruling and jurisdiction is proper.

■ We agree with Edward Gray that jurisdiction is appropriate in this case. The district court's August 22 order did not *deny* plaintiff's motion as National Union contends. The order simply stated that the first motion was *moot.* This is hardly surprising given that the court granted the motion to amend. The district court (and both parties) assumed that the motion for reconsideration was still outstanding as indicated by the court's statement that "[t]he Court will rule on plaintiff's amended motion for reconsideration by mail." Clearly, the court had not disposed of the motion for reconsideration. Therefore, the Federal Rules of Civil Procedure indicate that the time for filing the Notice of Appeal had not begun to run. "If any party makes a timely motion of a type specified immediately below, the time for appeal for all parties runs from the entry of the order *disposing of the last such motion outstanding.*" Fed. R.App.P. 4(a)(4) (emphasis added).

We acknowledge National Union's concern that allowing permissive amendment of the Rule 59(e) motion would defeat the purpose of the time limitation by allowing a party to file a skeleton motion and then add flesh to the skeleton's bones by "amending" the motion at a later date. The Federal Rules of Civil Procedure mandate that "[a]ny motion to alter or amend a judgment shall be filed no later than 10 days after entry of the judgment." Fed.R.Civ.P. 59(e). In the instant case, however, the amendment simply altered two sentences of the original motion for reconsideration. The district court judge granted Edward Gray's motion to *amend* the motion for reconsideration, as the court is free to do when the amendment consists of

an elaboration of a ground already set out in the original motion. *Martinez v. Trainor,* 556 F.2d 818, 820 (7th Cir.1977). National Union filed an opposition to Edward Gray's motion for reconsideration, but National Union did not object to the motion for reconsideration on grounds that an "amendment" was improper. Had the National Union objected to the amendment on the ground that it went beyond an "elaboration of a ground already set out in the original motion," the district court may have refused to permit an amendment. Such action, however, would not constitute a disposition of the initial motion for reconsideration. Edward Gray had not abandoned its motion, it only sought to amend the motion. The original motion still would have been "outstanding." This court's jurisdiction over the matter therefore remains unaffected.

### III. The Merits

■ We turn next to the merits of the case. The district court converted National Union's "motion to dismiss" into a motion for summary judgment without giving Edward Gray notice of its intent to do so and without giving Edward Gray an opportunity to respond. This was improper. Rule 12(b) of the Federal Rules of Civil Procedure states:

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and *all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.*

Fed.R.Civ.Proc. 12(b) (emphasis added). Edward Gray correctly points out that the court did not go through the formal motions of turning the 12(b)(6) motion to dismiss into a Rule 56 motion for summary judgment.

The district court found it unnecessary to give Edward Gray a chance to respond post-conversion for the following reasons:

> Aware of the fact that this Court could convert Union's motion [to dismiss] into a summary judgment motion, Gray addresses the possibility in its response to the motion [to dismiss]. Gray, however, does not argue that it would be prejudiced if we were to convert Union's motion into a summary judgment motion. Nor does Gray argue that it needs an opportunity to present material pertinent to respond to the motion.

*District Court's Memorandum Opinion* at 4.

The court's refusal to give Edward Gray a chance to respond is inappropriate for three reasons. First, Rule 12(b)'s requirement of a "reasonable opportunity to submit affidavits and extraneous proofs" is mandatory, not discretionary. Second, Edward Gray specifically stated that if National Union's motion to dismiss had included a Rule 12(M) statement of facts, then Edward Gray would have responded to it. Edward Gray filed a response to National Union's "motion to dismiss" stating that it was improper because: (a) it contained materials outside the complaint; (b) if extra-complaint materials were to be considered by the judge, then the motion would have to be treated as one for summary judgment and would require a Local Rule 12(M) statement of facts (which it did not contain), therefore it could not be treated as a motion for summary judgment; and (c) if National Union had submitted a Rule 12(M) statement of fact in support of its motion, "[Plaintiff] would have responded to [it]." It is not fair to say that Edward Gray did not argue that it needed an opportunity to respond to the motion. Third, it is irrelevant that Edward Gray was already aware of the fact that the district court could convert the motion. Every party is charged with awareness of the Federal Rules of Civil Procedure. Every party is therefore on notice that a district court may convert a 12(b)(6) motion to dismiss into a Rule 56 motion for summary judgment. The Federal Rules of Civil Procedure require the district court, however, to give the parties a reasonable opportunity to present all material made pertinent to such a motion by Rule 56. "[I]f a motion under Rule 12(b)(6) is thus converted into a summary judgment motion, the amendment insures that *both parties shall be given a reasonable opportunity to submit affidavits and extraneous proofs to avoid*

*taking a party by surprise* through the conversion of the motion into a motion for summary judgment." Fed.R.Civ.Proc. 12(b) advisory committee's note (emphasis added). Edward Gray was aware that the motion could be converted, but was taken by surprise because the district court converted the motion without giving Edward Gray a chance to respond.

■■■ Edward Gray protested the district court's error by filing a motion for reconsideration. We review for abuse of discretion the district court's decision on a motion for reconsideration. *Moro v. Shell Oil Co.,* 91 F.3d 872 (7th Cir.1996). An abuse of discretion exists if the district court made a manifest error of law. Summary judgment was inappropriate if there were material facts that Edward Gray could have brought before the court had the court given notice of its intent to convert the motion. *Bohac v. West,* 85 F.3d 306, 312 (7th Cir.1996). "If no potential disputed material facts exists [sic] or are represented to exist we will not disturb a summary judgment even though the trial judge failed to follow the notice procedure. On the other hand, where potential disputed material facts exist we would be required to find that summary judgment entered without notice was inappropriate." *Burick v. Edward Rose & Sons,* 18 F.3d 514, 516 (7th Cir.1994). Edward Gray did submit additional materials. The district court rejected the materials because they could have been submitted at the time of the motion for summary judgment. Edward Gray's failure to submit the materials earlier was, however, a result of the district court's failure to follow the dictates of Rule 12(b). Thus, the district court abused its discretion if the additional materials raise potential disputed material facts.

A closer look at the policy is necessary to understand the additional materials. The American Contractors' policy is an "occurrence" policy covering claims against Edward Gray for occurrences during the policy period of June 1, 1990, to June 1, 1993, regardless of when the claims were made. The premium under the policy was "retrospectively" rated. When the policy was issued, an estimated standard premium was set. The premium was adjusted in accordance with Edward Gray's actual incurred losses during the policy period. The retrospective premium consists of the standard premium, plus all converted losses and taxes, within a minimum and maximum retrospective premium amount. Essentially, any losses paid by American Contractors are converted into additional premiums paid by Edward Gray.

The result of this shifting of money is that American Contractors' loss payments are, to a significant degree, simply advances on behalf of Edward Gray. As one Commentator has noted, under a retrospectively rated policy, "an insurer is in effect, settling, in part at least, with the insured's money...." 14 Appleman, *Insurance Law and Practice* § 7849.25, at 139. The purpose of a retrospective premium provision is "to make the premium more closely reflect the actual loss and cost experience of the insured averaging out such experience over an extended period, usually three years." *Id.* at 136.

One might ask, what then is the point of this kind of insurance? The answer lies in the minimum and maximum retrospective premium amount. Under Edward Gray's policy with American Contractors, the minimum premium was 50 percent of the standard premium and the maximum premium was 163 percent of the standard premium, respectively. Thus, the policy entailed risk for both parties. Edward Gray would have to pay 50 percent of the standard premium even if American Contractors paid no losses. On the other hand, Edward Gray would have to pay only 163 percent of the standard premium even if American Contractors paid losses far exceeding that amount.

An overview of a retrospectively rated policy indicates that it is significantly different from a typical insurance policy.[1] Under a typical insurance policy, the premium may

---

1. The mechanics of the retrospective rating plan may explain why American Contractors did not bring suit against National Union. Any recovery in a suit by American Contractors against National Union would reduce the net amount by which American Contractors was out-of-pocket for losses and expenses it paid on Edward Gray's behalf. This would result in a retrospective premium credit and refund to Gray.

be increased based on a claim that is filed, but the increase is not retroactive. Future premiums are increased. The significance of this distinction is that the policyholder is not obligated to pay the increased premiums under a typical insurance policy. The policyholder may cancel the policy and avoid paying higher premiums. Under a retrospectively rated policy, however, the policyholder has no choice but to pay the increased premium.

The district court determined that the materials submitted by Edward Gray in its motion for reconsideration were insufficient to establish that Edward Gray had incurred any damage. The district court stated that Edward Gray had demonstrated only

> interim adjustments, subject to a *final* adjustment at the end of the retrospective rating period. Given the nature of such a plan, no reasonable damages calculation can be attempted until such time as a final retrospective premium adjustment under the American Contractors policy is made. Whether Gray will ultimately have to pay an additional premium thus remains speculative in spite of Edward Gray's attempted submissions.

*Memorandum Opinion* at 6 (emphasis in original).

█ A review of the record in the light most favorable to Edward Gray indicates that a genuine issue of material fact exists and summary judgment was inappropriate. First, Edward Gray submitted an affidavit and schedule with its motion for reconsideration showing that as of July 1, 1995, (three weeks before summary judgment) Edward Gray's actual retrospective premium was $209,791 higher than it would have been if National Union had paid for Edward Gray's defense in the underlying action. Of this amount, Edward Gray had actually paid $172,927 and owed an additional $36,864. Edward Gray sustained actual damage. Second, the court's conclusion that the increase in the policy's premium was subject to a "final" adjustment is vehemently denied by Edward Gray. The policy contains no provision for a "final" adjustment of the retrospective premium, unless the parties (Edward Gray and American Contractors) both agree

to a final adjustment. The record contains no evidence of an agreement to a date for a final calculation. This is a *factual* question that is definitively inappropriate for resolution on summary judgment. We must assume that Edward Gray's version of the facts is true, given the procedural posture of the case.

National Union builds on the district court's concern regarding the "speculative" nature of any additional premiums by noting that a suit for damages is premature if it is brought before any such damages have occurred. *Midwest Commerce Banking Co. v. Elkhart City Centre,* 4 F.3d 521, 526 (7th Cir.1993). National Union then argues that the element of damages is still lacking from Edward Gray's case because "there are at least two future scenarios that can be reasonably inferred, each resulting in Edward Gray's premium being unaffected by any purported breach of contract by National Union." In the first scenario, American Contractors would have no additional paid losses under Edward Gray's policy. Edward Gray would therefore be entitled to a return premium, essentially a refund of a portion of its premium. In the second scenario, American Contractors would have so many paid losses under Edward Gray's policy that Edward Gray would be required to pay its maximum retrospective premium regardless of the expenses incurred in the NIPSCO litigation. Based on these possible future scenarios, National Union argues that whether Edward Gray will have to pay an additional premium remains speculative.

National Union's argument actually serves to support Edward Gray's position in the light of the facts of the case. Edward Gray's motion for reconsideration included an affidavit stating that Edward Gray had *already paid* increased premiums and that the increase in the premiums was caused by the costs of defense of the NIPSCO litigation. For purposes of summary judgment, we must accept the affidavit as true. Edward Gray has suffered damages and the damages are certain. What is speculative is whether those damages may be offset by some future refund; National Union's theory that Edward Gray's damages may be offset by fu-

ture events is speculation and the amount and nature of any potential offset is unprovable.

Finally, Edward Gray argues that the district court erred in determining that the collateral source rule (also known as the collateral benefit principle), *See Wilson v. Hoffman Group, Inc.*, 131 Ill.2d 308, 320, 137 Ill.Dec. 579, 585, 546 N.E.2d 524, 530 (1989); *GNP Commodities, Inc. v. Walsh Heffernan Co.*, 95 Ill.App.3d 966, 51 Ill.Dec. 245, 420 N.E.2d 659 (1st Dist.1981), did not apply to Edward Gray's action against National Union. In the light of our decision today, we do not reach Edward Gray's argument.

### IV. Conclusion

For the foregoing reasons, the district court's decision denying reconsideration is REVERSED and REMANDED.

TERENCE T. EVANS, Circuit Judge, dissenting.

The Edward Gray Corporation filed this suit against National Union claiming it "incurred and personally paid" a quarter of a million dollars as a result of Union's failure to defend it in litigation growing out of an accident at a power station in northern Indiana. The allegation was false. Edward Gray, it turned out, paid nothing. One of its other insurers, however, expended funds ($250,000 perhaps) to get Gray out of the power station litigation without a scratch. Because Gray personally suffered no damages, the district court gave Union a quick ticket out of the case when it granted summary judgment on a converted Rule 12 motion to dismiss. This action followed Gray's initial filing of a motion seeking summary judgment in its favor.

I cannot join the majority's conclusion that the district court improperly transformed Union's motion to dismiss into one for summary judgment "without giving Edward Gray an opportunity to respond." While it would have been wiser for Union to have called its request a motion for summary judgment rather than a motion to dismiss, I am satisfied that Gray had more than a reasonable opportunity to respond and get before the court its view of whether it suf-

fered damages. The purpose of the "notice of intent to convert rule" is, as the majority notes, to prevent surprise. That a conversion occurred here was about as surprising as the Republican party's decision last week to nominate Bob Dole as its '96 presidential candidate. Gray knew what was happening, and the material it finally got together in support of its motion for reconsideration should have been filed right off the bat.

Furthermore, what Gray eventually submitted was, as Judge Kocoras noted, insufficient to defeat Union's prayer for summary judgment. Discovery unmasked Gray's claim that it "personally paid" $250,000 doing what Union, as its insurance carrier, was allegedly obligated to do. Why Gray tried to slip this one by on the inside corner is unclear, but it is now an admitted fact. Gray's belated attempt to find some damages here through its "retrospectively rated premium" argument is, on these facts at this time, nothing but speculation. I would affirm the decision of the district court.