In re Alan D. EMERSON and Brenda E. Emerson, Debtors.

Jeffrey A. Schreiber, Chapter 7 Trustee, Plaintiff,

v.

Alan D. Emerson and Brenda E. Emerson, Defendants.

Jeffrey A. Schreiber, Chapter 7 Trustee, Plaintiff,

v.

William H. Stephenson and John W. Stephenson, Defendants.

Bankruptcy No. 97–10318–JMD, Adversary Nos. 97–1095–JMD, 99–1006–JMD.

United States Bankruptcy Court, D. New Hampshire.

Dec. 28, 1999.

Randall L. Pratt, Law Offices of Steven Slovenski, Portsmouth, NH, for Jeffrey A. Schreiber, Chapter 7 Trustee.

Michael Burke, Law Office of Gregg M. Lewis, Laconia, NH, for Alan D. and Brenda E. Emerson.

John Rogers, Meredith, NH, for William H. and John W. Stephenson.

### ORDER ON MOTIONS TO ALTER JUDGMENT

J. MICHAEL DEASY, Bankruptcy Judge.

## I. INTRODUCTION

The Court has before it two motions to alter judgment, one filed by Alan Emerson ("Emerson") and his wife Brenda Emerson

(collectively the "Emersons" or the "Debtors"), and the other filed by John Stephenson and his son William Stephenson (collectively the "Stephensons"), both of which were filed pursuant to Rules 8002(b)(2) and 9023 of the Federal Rules of Bankruptcy Procedure. In their respective motions, the Defendants ask the Court to reconsider various portions of its judgment and memorandum opinion entered on October 26, 1999 (the "Memorandum Opinion"). As expected, the Trustee objected to the motions. The Court held a hearing on the motions on November 20, 1999 at which it took the matters under advisement.

## II. DISCUSSION

### A. Standard

■ A motion requesting a bankruptcy court to modify its earlier disposition of an adversary proceeding solely because of an alleged erroneous legal result is brought under Federal Rule of Bankruptcy Procedure 9023 and Federal Rule of Civil Procedure 59(e). *See Aybar v. Crispin–Reyes,* 118 F.3d 10, n. 3 (1st Cir.1997) (quoting *Skagerberg v. State of Okla.,* 797 F.2d 881, 883 (10th Cir.1986)). "Rule 59(e) allows a party to direct the [bankruptcy] court's attention to newly discovered material evidence or a manifest error of law or fact and enables the court to correct its own errors and thus avoid unnecessary appellate procedures. The rule does not provide a vehicle for a party to undo its own procedural failures, and it certainly does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the [bankruptcy] court prior to the judgment." *Moro v. Shell Oil Co.,* 91 F.3d 872, 876 (7th Cir.1996) (quoted in *Aybar,* 118 F.3d at 16). "Except for motions to amend based on newly discovered evidence, the trial court is only required to amend its findings of fact based on evidence contained in the record. To do otherwise would defeat the compelling interest in the finality of litigation." *Fontenot v. Mesa Petroleum Co.,* 791 F.2d 1207, 1219 (5th Cir.1986) (quoted in *Aybar,* 118 F.3d at 16). "Whether to alter a judgment under Rule 59(e) of the Federal Rules of Civil Procedure is a decision entrusted to the sound judgment of the trial court. A [bankruptcy] court's denial of a Rule 59(e) motion, although final and appealable, may be reversed only for a manifest abuse of discretion." *Mariani–Giron v. Acevedo–Ruiz,* 945 F.2d 1, 3 (1st Cir.1991).

### B. Arguments

#### 1. Emersons' Motion

The Emersons request reconsideration of the Court's judgment for several reasons. First, the Emersons argue that the Court erred in determining that the Emersons' positions were inconsistent with respect to when the Seneca and the Warrior were transferred, a conclusion that led the Court to hold that the Emersons knowingly and fraudulently concealed the transfer of the Warrior. Second, the Emersons argue that the record contains no evidence to support a finding that the Emersons knew or should have known that title to the Warrior would pass to John Stephenson only upon issuance of a bill of sale sufficient to be recorded with the FAA. As a result, according to the Debtors, their failure to disclose the Warrior transfer was due to a good faith belief that the actual transfer occurred outside the one-year look back period. Third, the Emersons argue that they did not have any actual intent to conceal the transfer of the Warrior or such a reckless disregard that they would be deemed to possess an intent to conceal the transfer.

#### 2. Stephensons' Motion

The Stephensons request reconsideration of the Court's judgment for three reasons. First, the Stephensons argue that the Court erroneously found that William Stephenson was an insider of the Debtors. Second, the Stephensons argue that the Court made an erroneous finding

when it concluded that John Stephenson was an insider. Third, the Stephensons argue that the Court committed legal error by failing to consider their defense to the Trustee's state law claim in Count III of the Stephenson Complaint pursuant to RSA 545–A:8(VI)(c).

## C. Ruling

Having considered the parties' written and oral arguments, the Court will not alter its judgment as neither the Emersons nor the Stephensons have presented newly discovered evidence nor convinced the Court that its rulings are erroneous. The Court, however, will expand upon its reasoning as follows with respect to the rulings being contested by the Defendants.

### 1. Emerson Complaint

#### a. Inconsistent Positions

■ Despite the Emersons' argument, the Court continues to believe that the Debtors' positions regarding the transfers of the Seneca and the Warrior are inconsistent for the reasons outlined in the Memorandum Opinion. Even if the Debtors intended that the Warrior be transferred to John Stephenson in 1995, without Brenda Emerson's signature on the bill of sale, the airplane could not have been transferred at that time. The Emersons, given their years of aviation experience, were aware that Brenda Emerson's signature was necessary to transfer her interest in the airplane. It is undisputed that a bill of sale signed by both of the Emersons was not executed until September 1996, within the one-year look back period.

#### b. Good Faith Belief

Even assuming that the Debtors intended the transfer of the Warrior to take effect in 1995, they could not have had a good faith belief that the transfer was effective then because Brenda Emerson had not transferred her interest in the plane until the corrected bill of sale was signed in September 1996. The Debtors

testified that they had encountered this problem at least once before (i.e., a transfer being ineffective as to the parties because all record owners had not executed the bill of sale). The record contains sufficient evidence to support a finding that the Emersons knew or should have known that title to the Warrior would pass to John Stephenson only upon issuance of a bill of sale sufficient to be recorded with the FAA. The Court finds that the failure to disclose the Warrior transfer was not due to a good faith belief that the actual transfer occurred outside the one-year look back period.

#### c. No Actual Intent

While the Emersons argue that they did not have any actual intent to conceal the transfer of the Warrior or such a reckless disregard that they would be deemed to possess an intent to conceal the transfer, the Court stands by its ruling in the Memorandum Opinion. The Debtors knew that they had signed a new bill of sale for the Warrior in September 1996 and yet the Debtors failed to notify their counsel, their accountant, or the Trustee of the transfer. While reference to the transfer was omitted from the Debtors' schedules and statement of financial affairs, the Debtors had ample opportunity to raise the issue at the first meeting of creditors when various transfers were being discussed. The Debtors, however, chose to remain silent regarding the transfer of the Warrior. This further supports the Court's ruling that the Emersons "knowingly and fraudulently ... made a false oath or account." *See* 11 U.S.C. § 727(a)(4).

### 2. Stephenson Complaint

#### a. William Stephenson as Insider

■ With respect to its finding that William Stephenson is an insider, the Court reiterates that a reasonable inference can be drawn from all the evidence that William Stephenson acted jointly and in concert with his father with respect to their financial dealings with the Debtors. While

it is true that William Stephenson's involvement with the Debtors was limited (i.e., purchasing the second mortgage on the Debtors' property in 1994, sending them a letter in April 1996 requesting payment on their obligations, and attending the September 1996 meeting), this fact only bolsters the Court's conclusion that William Stephenson's involvement in the Emersons' affairs was derivative of his father's involvement. The record contains evidence establishing that the Emersons themselves made no distinction between William Stephenson and his father.

The Court's finding that William Stephenson is an insider is further supported by the parties' conduct after the September 1996 meeting and the Debtors' bankruptcy filing. Although William Stephenson is a secured creditor of the Emersons, holding mortgages on both their home and business property, he has not received payment on his notes nor any rent for use of the premises after the Stephensons' "foreclosure" or "repossession" of the property in September 1996. Despite the Debtors' non-payment, William Stephenson has not taken any formal steps to foreclose. In the Court's view, this speaks volumes as to nature of the relationship between William Stephenson and the Emersons. Creditors who deal at arms' length do not sit by idly without receiving regular payments. Rather, a creditor who is commercially motivated takes steps to realize on his collateral. For these additional reasons, the Court remains convinced that William Stephenson is an insider of the Debtors within the meaning of 11 U.S.C. § 101(31).

### b. John Stephenson as Insider

The Stephensons argue that the Court erred in finding John Stephenson an insider. They specifically argue that John Stephenson was not a major source of financing for the Emersons nor did John Stephenson exercise control over the Emersons' business. The Court stands by its discussion of these issues in the Memorandum Opinion. The Court emphasizes that commercially motivated individuals do not continually advance money over a period of twenty years when the only regular debt service is for a period of twenty-six months. The Court further notes that John Stephenson's lack of action post-petition to collect or liquidate the Debtors' assets supports the Court's conclusion that he is an insider.

### c. Defense under RSA 545–A:8

In their motion, the Stephensons raise for the first time a defense under RSA 545–A:8(VI)(6) which provides that "[a] transfer is not voidable under RSA 545–A:5, II ... [i]f made pursuant to a good-faith effort to rehabilitate the debtor and the transfer secured present value given for that purpose as well as an antecedent debt of the debtor." As the Court of Appeals for the First Circuit has stated, motions to reconsider are not the proper avenue for advancing arguments that could and should have been presented to the trial court prior to the judgment. *See Aybar*, 118 F.3d at 16. Despite this infirmity, the Court holds that the defense does not apply in this case for two reasons. First, the record does not support the Stephensons' contention that the transfer of the Warrior was made pursuant to a good-faith effort to rehabilitate the Debtors. John Stephenson testified that he had no interest in the airplane and did not want it to serve as collateral for the $30,000 loan for the Keene operation. According to the parties, it was Emerson's idea to turn over the airplane since he could not service the loan. The record contains ample evidence that the transfer of the Warrior was due to the Debtors' default on the 1993 loan from John Stephenson, not any effort at rehabilitation. John Stephenson testified that his intent at the time he received the corrected bill of sale for the Warrior and at the time he and his son purchased the first mortgage held by Laconia Savings Bank was to secure he and his son's own interests in the Debtors'

assets. John Stephenson did not testify that he wanted to rehabilitate the Debtors. Rather, John Stephenson testified that he and his son purchased the first mortgage in order to protect their junior interests in the Debtors' property. Second, there is no evidence in the record that the transfer of the Warrior secured present value given for that purpose. The Stephensons argue that the money they spent on purchasing the first mortgage and note from Laconia Savings Bank was the present value referred to in the statute. However, the record contains no evidence as to what amount the Stephensons paid for the first mortgage and note and, in any event, contains ample evidence that said note and mortgage were acquired to protect the Stephensons' junior secured interests, not as consideration for or an advance relating to the transfer of the Warrior. For these reasons, the Court finds no merit in the Stephensons' tardily raised defense.

## III. CONCLUSION

For all the reasons outlined above, the Emersons' and the Stephensons' motions to alter judgment are denied. The Court's final judgment dated October 26, 1999 shall remain as entered.