In the

# United States Court of Appeals

## For the Seventh Circuit

No. 19-3325

A&C CONSTRUCTION & INSTALLATION, CO. WLL,

*Plaintiff-Appellant*,

*v.*

ZURICH AMERICAN INSURANCE COMPANY and THE INSURANCE
COMPANY OF THE STATE OF PENNSYLVANIA,

*Defendants-Appellees*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 17-cv-04307 — **Harry D. Leinenweber**, *Judge*.

ARGUED MAY 26, 2020 — DECIDED JUNE 30, 2020

Before FLAUM, SCUDDER, and ST. EVE, *Circuit Judges*.

ST. EVE, *Circuit Judge*. The Miller Act, 40 U.S.C. § 3131 *et seq.*, seeks to protect subcontractors against nonpayment for work performed on federal government construction projects by requiring the prime contractor to provide a payment bond on which the subcontractor can then make a claim for payment. A&C Construction & Installation, Co. WLL was a subcontractor on an air base project in Qatar and claims that it

was not paid approximately $8.5 million for work it performed on the project, so it filed this action against the prime contractor's two sureties, Zurich American Insurance Company and The Insurance Company of the State of Pennsylvania. As strict preconditions to payment, however, the Miller Act requires that subcontractors provide a notice of nonpayment within ninety days after the last day of work performed and then file suit within one year of the last date of work. The district court found that A&C missed both deadlines and granted summary judgment in favor of the sureties. Because A&C did not meet the Miller Act's notice requirement, we affirm the judgment.

## I. Background

This dispute arises from a federal construction project with the United States Army Corps of Engineers for the construction of two billets on the Al Udeid Air Base in Qatar. The Miller Act provides that on any contract of more than $100,000 for "the construction, alteration, or repair of any public building or public work of the Federal Government" the contractor must supply "[a] payment bond with a surety satisfactory to the officer for the protection of all persons supplying labor and material in carrying out the work provided for in the contract for the use of each person." 40 U.S.C. § 3131(b)(2). Amec Foster Wheeler Environment & Infrastructure, Inc., was the prime contractor on the Qatar air base project. As such, Amec Foster Wheeler, as principal, and defendants Zurich American Insurance Company and The Insurance Company of the State of Pennsylvania, as sureties, executed and delivered to the Army Corps the required payment bond.

Amec Foster Wheeler awarded certain work on the project to a subcontractor, Black Cat Engineering & Construction

WLL—first mechanical work and later additional fire suppression work. Black Cat, in turn, subcontracted with A&C for some of that work. A&C, therefore, was the sub-subcontractor or second-tier subcontractor on the project. On January 31, 2013, Black Cat and A&C entered into a contract for A&C to perform portions of the mechanical, electrical, and plumbing services that Amec Foster Wheeler awarded to Black Cat (the "MEP Agreement"). On July 1, 2013, Black Cat and A&C entered into a second contract for A&C to perform portions of the fire suppression work awarded to Black Cat (the "Fire Suppression Agreement"). Together, the work for these two contracts forms the basis of this lawsuit.

A&C later subcontracted some of the ductwork under the MEP Agreement to Raymond Nahra for Electrical & Mechanical Works Co., W.L.L. ("RNC"). Thus, on the project, RNC was a third-tier subcontractor. From all accounts, RNC performed work on the project through the project's completion date in February 2017.

The relationship between Black Cat and A&C eventually deteriorated. On December 16, 2015, Black Cat terminated A&C from the Fire Suppression Agreement. The sureties contend that A&C had already stopped most of its work related to the MEP Agreement in November 2015 and that A&C last performed any work on the project on May 16, 2016. A&C disputes this characterization, primarily as it relates to the date it last performed any work on the project. Specifically, A&C insists that, despite the termination, it continued to provide labor and equipment after that date because its equipment remained on the site for Black Cat's use, and it continued to provide supervision of one of its subcontractors (RNC) through the project's completion on February 28, 2017. Accordingly,

A&C asserts that the date it last performed labor or supplied material for the project was February 28, 2017.

It is undisputed, however, that A&C provided its notice under the Miller Act on August 16, 2016. That notice claimed that Black Cat owed A&C $8,449,710 for "Mechanical, Electrical and Plumbing and Fire Suppression works." As to the "[d]ate on which the last of the labor, services, equipment or materials were furnished," A&C stated that "[c]ertain A&C equipment remains onsite."

A&C filed its complaint on June 7, 2017, alleging a single Miller Act claim against the sureties for payment on the bond in the amount of $8,637,423. After discovery, the sureties moved for summary judgment, arguing that A&C's last day of work was—at the latest—May 16, 2016. The notice date, August 16, 2016, is ninety-one days after May 16, 2016, and outside of the mandatory ninety-day notice period. A&C also did not file suit until June 7, 2017, more than one year after the sureties allege A&C last provided labor or material on the project. A&C disputed the May 16, 2016, date and instead argued that it leased equipment to Black Cat that was utilized on the project up until its conclusion on February 28, 2017, and its subcontractor RNC also continued to provide labor until the completion date. Thus, A&C countered, it filed the lawsuit within one year of that date. Further, as to the fact that its Miller Act notice was served far more than ninety days *before* its alleged last day of work, A&C simply argued that it "provided *too much notice*" and there was nothing that barred it from providing the notice earlier than required.

The district court granted the sureties' motion for summary judgment. The court found that even if A&C was able to use leased equipment to Black Cat as its claimed last day of

work performed as a legal matter, the argument still failed because A&C did not provide notice "within 90 days" of that date (February 28, 2017). As to the "too much notice" argument, the district court similarly rejected it because it did "not meet with the requirement that the limitations periods constitute conditions precedent and are to be strictly construed."

Based on some admitted misstatements in the district court's opinion, A&C filed a post-judgment motion pursuant to Federal Rule of Civil Procedure 59(e) to alter or amend the judgment, alleging that the decision rested on "a manifest error of fact." In three places, the opinion erroneously stated that A&C did not file its complaint within one year of its Miller Act notice. (E.g., "If Plaintiff is to rely upon its 90-day notice, then it needed to bring suit with one year or by August 19, 2017 [sic] …. It did not do so. In fact, its Complaint, which was filed on June 7, 2017, …."). But A&C in fact had—the notice date was August 16, 2016, and the lawsuit was filed ten months later on June 7, 2017. The problem for A&C, though, is that the one-year limitation does not run from the notice date. Both the notice period and lawsuit period run from the last day of claimed work. So the district court's miscalculated time period was irrelevant.

Nevertheless, A&C seized on these mistakes and argued for the first time that, according to the district court's own reasoning, "if A&C is not entitled to recover for work performed after the date of its notice (as the Court has held), then the last date of recoverable work was on August 16, 2016, the date of the notice." A&C now contended that it served its Miller Act notice "contemporaneous[ly] with work performed by A&C (in the form of, at the least, leasing equipment)," and, because its complaint "was filed within one year of that date," it was

"not barred from seeking payment for its pre-notice work." The district court denied A&C's Rule 59(e) motion, "apologi[zing] for the sloppy proof reading" but "not[ing] that it cited and applied the correct standard" throughout the opinion. Despite the few misstatements, the court found that it committed no manifest error of fact or law.

A&C now appeals from the district court's summary judgment ruling.

## II. Discussion

This appeal presents a seemingly straightforward question—whether A&C's notice and civil action were timely under the Miller Act. The parties, however, dispute the correct date of the last work performed, which is the relevant triggering event from which the time periods run. We review the district court's summary judgment ruling de novo and consider facts and draw inferences in the light most favorable to the nonmoving party. *Hall v. City of Chicago*, 953 F.3d 945, 950 (7th Cir. 2020). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Section 3133 of the Miller Act governs the right to bring a civil action on a payment bond, and provides two express timing requirements. First, a sub-subcontractor must give "written notice to the contractor within 90 days from the date on which the person did or performed the last of the labor or furnished or supplied the last of the material for which the claim is made." 40 U.S.C. § 3133(b)(2). That is, the sub-subcontractor must first notify the general contractor of the situation before it can sue on the bond. Second, assuming the

general contractor does not pay the outstanding bill, any "action brought under this subsection must be brought no later than one year after the day on which the last of the labor was performed or material was supplied by the person bringing the action." *Id*. § 3133(b)(4). Though the Miller Act is "remedial and to be liberally construed," giving written notice and bringing suit within the prescribed time limits are strict conditions precedent to the right to maintain the action. *United States ex rel. Material Serv. Div. of Gen. Dynamics Corp. v. Home Indem. Co.*, 489 F.2d 1004, 1005 (7th Cir. 1973).

Before we can decide the timeliness of A&C's notice and lawsuit, we must confront a threshold question regarding waiver. At summary judgment, A&C opposed the sureties' motion on the basis that (1) its August 16, 2016 notice was timely because it provided "too much notice," being served earlier than the claimed last date of work, February 28, 2017; (2) its lawsuit was timely filed on June 7, 2017, because it was filed within one year of the claimed last date of work, February 28, 2017; and, therefore, (3) it was entitled to recover for all work performed through its claimed last day of work, February 28, 2017. In its post-judgment motion, A&C's position shifted to argue that: (1) its August 16, 2016 notice was timely for work performed on or before that date; (2) its lawsuit was timely filed within one year of the notice; and, therefore, (3) it was entitled to recover for its pre-notice work, or through August 16, 2016. Now on appeal, A&C continues to press its theory of partial recovery for pre-notice work only. That argument was not properly presented to the district court and, as a consequence, A&C has waived it.

The purpose of Federal Rule of Civil Procedure 59(e) is to allow a party to bring to the district court's attention a

manifest error of fact or law so that it may correct, or at least address, the error in the first instance. *Moro v. Shell Oil Co.*, 91 F.3d 872, 876 (7th Cir. 1996). A Rule 59(e) motion, however, "does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to the judgment." *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 529 (7th Cir. 2000) (quoting *Moro*, 91 F.3d at 876); *LB Credit Corp. v. Resolution Tr. Corp.*, 49 F.3d 1263, 1267 (7th Cir. 1995) ("[A] motion to alter or amend a judgment is not appropriately used to advance arguments or theories that could and should have been made before the district court rendered a judgment."). The district court's "opinions are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure." *Quaker Alloy Casting Co. v. Gulfco Indus., Inc.*, 123 F.R.D. 282, 288 (N.D. Ill. 1988). A&C had the opportunity to make the argument that it now advances during the summary judgment proceedings but failed to do so. A&C must live with that decision.

A&C's attempt to characterize this argument as merely "narrow[ing] the issues on appeal" does not save the day. Though A&C nominally maintains the same claimed last day of work of February 28, 2017, A&C did not—before the district court entered judgment—discuss the pre-notice period as a separate recoverable period or its entitlement thereto. There was no mention of this pre-notice, partial recovery theory in A&C's summary judgment briefing, and all of its allegations both before and during summary judgment related to full recovery for work performed through the project's completion in February 2017. It was not until after the district court issued its summary judgment opinion that A&C grabbed hold of certain (erroneous) language and unveiled its new partial

recovery theory, arguing that by the court's own reasoning it was now entitled to recover for its pre-notice work. Far from simply narrowing issues to present for appellate review, this represents a complete shift in A&C's alleged right to recover that materially alters the resulting legal analysis. The record before the district court at summary judgment was silent as to A&C's claim for partial recovery and we will not take up the merits of that argument for the first time.

With the scope of our review settled, we turn to the question properly before us. Though a factual dispute still exists regarding A&C's last day of work—the sureties assert May 16, 2016, and A&C claims February 28, 2017—we need not resolve that issue to decide the appeal. As the district court did, we will assume that the date A&C last performed work for purposes of its Miller Act claim is February 28, 2017. There is no dispute, however, that A&C served its Miller Act notice on August 16, 2016. As one of the strict preconditions to the right to bring a civil action on the payment bond, a sub-subcontractor must give "written notice to the contractor within 90 days from the date on which the person did or performed the last of the labor or furnished or supplied the last of the material for which the claim is made." 40 U.S.C. § 3133(b)(2). August 16, 2016, is not "within 90 days" of February 28, 2017. The statute is unambiguous on the timing of the notice requirement and we must enforce it as written. *See U.S. ex rel. S & G Excavating, Inc. v. Seaboard Sur. Co.*, 236 F.3d 883, 885 (7th Cir. 2001). A&C failed to timely serve its Miller Act notice and therefore cannot maintain an action against the sureties on the payment bond.

### III. Conclusion

The Miller Act aims to protect subcontractors on federal construction projects against nonpayment, but nonetheless demands strict compliance with certain conditions precedent to the right to recover. Having waived its partial recovery argument for pre-notice work only, we are left with a straightforward question of whether A&C provided its required Miller Act notice within ninety days of the date it claimed for its last day of recoverable work. A&C did not and therefore cannot sue on the payment bond. The judgment of the district court is

AFFIRMED.