**Mario FELIBERTY, M.D.,**
**Plaintiff–Appellant,**

v.

**KEMPER CORPORATION, Kemper Life Insurance Companies, Federal Kemper Life Assurance Companies, Fidelity Life Association, and Kemper Investors Life Insurance Company, Defendants–Appellees.**

No. 95–1724.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 20, 1995.

Decided Oct. 16, 1996.

Dennis Hesser, Chicago, IL (argued), for Plaintiff-Appellant.

Paul R. Garry (argued), Michael J. Gray, Robin I. Edelstein, Bates, Meckler, Bulger & Tilson, Chicago, IL, for Defendants-Appellees.

Gwendolyn Young Reams, John P. Rowe, Carolyn L. Wheeler, Mary L. Clark (argued), Equal Employment Opportunity Commission, Washington, DC, for Equal Employment Opportunity Commission, Amicus Curiae.

Douglas S. McDowell, Ann Elizabeth Reesman, McGuiness & Williams, Washington, DC, for Equal Employment Advisory Council, Amicus Curiae.

Before CUDAHY, EASTERBROOK, and RIPPLE, Circuit Judges.

CUDAHY, Circuit Judge.

In the course of his employment, Mario Feliberty spent a lot of time typing at a computer keyboard. As a result, he developed carpal tunnel syndrome, which eventually became so severe that it prevented him from typing at all. Feliberty blames his employers for the advanced state of his affliction, contending that his condition deteriorated because they failed to reasonably respond to his request for modifications in his workstation. He believes that this failure constitutes discrimination as defined by the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*, and he brought a lawsuit in the district court, asserting this belief. His employers responded to his allegations with a motion for summary judgment. Pointing to his complaint and to a charge that he had filed with the Equal Employment Opportunity Commission, they insisted that he had admitted that they had provided him with reasonable accommodations. The district court agreed with the employers and entered summary judgment for them. Because we conclude that the employers' motion did not adequately establish a basis for summary judgment, we reverse the judgment of the district court.

## I.

The Kemper Corporation hired Feliberty, a physician, to serve as the Medical Director for some of its constituent entities, the Kemper Life Insurance Companies, the Federal Kemper Life Assurance Companies, the Fidelity Life Association and Kemper Investors Life Insurance Company. As Medical Director, Feliberty facilitated life insurance underwriting by analyzing the medical records of policy applicants. A significant part of this duty involved the review of case files which Kemper stored on computers. According to his own affidavit in the record, Feliberty spent as many as six or eight hours of each day using a computer keyboard.

All of this keyboard use caused numbness and pain in his hands and wrists. On April 21, 1993, Feliberty went to a doctor, who concluded that he suffered from carpal tunnel syndrome, a condition arising when swelling around the tendons in the hand compresses the median nerve in the wrist. If unrelieved, carpal tunnel syndrome can lead to nerve damage. On the day after this diagnosis, Feliberty asked Kemper to modify the arrangement of his computer and keyboard to accommodate his condition. Unfortunately, the record does not show just what Feliberty asked Kemper to do; nor does the record show precisely what Kemper did in response to this request; but, the record does show that, in late May 1993, Kemper did something. By this time, however, Feliberty's condition had worsened, and the modification that Kemper provided did not relieve his distress. In June 1993, he returned to the doctor who advised him to stop working and to consult a surgeon. Feliberty followed this advice, and during the summer of 1993 he had surgery on both hands. The surgery did not help. By October 1993, a doctor found that he suffered from two of the potential consequences of carpal tunnel syndrome, median neuropathy and a superimposed reflex sympathetic dystrophy. These polysyllabic disorders make the hands feel weak and move involuntarily.

Feliberty did not return to his job at Kemper, nor did he ask for further accommodations of his disability. He did file a charge with the Equal Employment Opportunity Commission in December 1993, alleging that Kemper violated the ADA by failing to provide a reasonable accommodation. In March 1994, Kemper terminated his position because it found that outside physicians retained on contract were adequate replacements for an inside medical director. Six months later, Feliberty initiated a lawsuit in federal court, bringing claims under the ADA and state law. The district court dismissed the state law claims, and Feliberty does not appeal this decision. He does appeal the district court's grant of summary judgment to Kemper on his ADA claim.

## II.

When we review a district court's grant of summary judgment, we consider the record according to the same standards employed by the district court. *Beck v. University of Wisconsin Bd. of Regents,* 75 F.3d 1130, 1134 (7th Cir.1996). We thus consider

all of the evidence in the record in the light most favorable to the non-moving party, and we draw all reasonable inferences from that evidence in favor of the party opposing summary judgment. *Id.* Summary judgment is appropriate if the record reflects no genuine issues of material fact. Fed.R.Civ.P. 56(c). Applying the standard defined in Rule 56 involves, first, identifying the material issues in terms of the applicable substantive law and, second, evaluating the evidence in the record to determine whether disputes about these issues are genuine. These are two distinct legal analyses. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–50, 106 S.Ct. 2505, 2509–11, 91 L.Ed.2d 202 (1986).

The ADA defines the issues of material fact relevant to Feliberty's claim, and the parties do not dispute what they are. The ADA applies to employers, employment agencies, labor organizations and joint labor-management committees, which it calls "covered entities." 42 U.S.C. § 12111(2). It prohibits these entities from discriminating against qualified individuals with a disability, those who can perform the essential functions of the job that they hold or desire, with or without a reasonable accommodation. 42 U.S.C. §§ 12112(a)–(b), 12111(8). The statute specifically defines several forms of discrimination, and Feliberty alleged that Kemper engaged in the kind of discrimination described in § 12112(b)(5)(A). That section provides that a covered entity discriminates when it fails to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such a covered entity." In light of these provisions, Feliberty's suit raised two central issues of material fact that were dispositive in the district court: whether he could perform the essential functions of his job with or without a reasonable accommodation, and whether Kemper had provided a reasonable accommodation.

Although they do not disagree about the nature of the relevant issues, Feliberty and Kemper do disagree about whether there is—or can be—a genuine dispute about them. To prevail on its motion for summary judgment, Kemper had the initial responsibility of informing the district court about the basis for its motion and identifying those aspects of the record that demonstrated the absence of a genuine dispute about the material issues. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Feliberty's appeal is based on the argument that Kemper utterly failed to make this identification adequately. He believes that, when considered in the light most favorable to him, the record does reveal material factual disputes. Kemper maintains that it was entitled to summary judgment because Feliberty committed a serious procedural error in responding to its motion. In any event, Kemper insists that it did fulfill its responsibilities under Rule 56 by pointing out that Feliberty's allegations and the evidence relevant to them would not sustain a cause of action under § 12112(b)(5)(A).

### A.

Kemper defends its summary judgment by arguing that Feliberty essentially defaulted in his effort to establish a genuine issue of material fact by failing to comply with local procedural rules governing summary judgment motions. Under the local rules for the Northern District of Illinois, a motion for summary judgment imposes special procedural burdens on the parties. The moving party must supplement its motion papers and supporting memorandum with a statement of undisputed material facts. No. Dist. Ill. Local Gen. R. 12(M). The non-moving party must supplement its response with a statement of disputed material facts. No. Dist. Ill. Local Gen. R. 12(N). If the nonmoving party fails to file a 12(N) statement, the district court will assume that the non-moving party has admitted the moving party's version of the facts, and the court will not continue to construe facts in favor of the non-moving party. *See Midwest Imports, Ltd. v. Coval,* 71 F.3d 1311, 1313 (7th Cir. 1995); *Johnson v. Gudmundsson,* 35 F.3d 1104, 1108 (7th Cir.1994). If a district court properly rules that a non-moving party has violated rule 12(N), our review of its summary judgment order will be guided by the

same standards as were observed by the district court. *Illinois Conf. of Teamsters & Employers Welfare Fund v. Steve Gilbert Trucking*, 71 F.3d 1361, 1364 (7th Cir.1995). We will reverse a ruling made under rule 12(N) only when it constitutes an abuse of discretion. *Rosemary B. v. Board of Educ. of Community High School Dist. No. 155*, 52 F.3d 156, 159 (7th Cir.1995).

The district court considered the issue of Feliberty's compliance with rule 12(N). In its memorandum opinion, it noted that Feliberty had failed to file a 12(N) statement and that this procedural fault was alone sufficient to justify summary judgment for Kemper. Nevertheless, the court then went on to consider the merits of Feliberty's arguments as presented in his memorandum opposing summary judgment. Soon after issuing its opinion, the district court discovered that Feliberty had, in fact, filed a 12(N) statement. In a minute order amending the memorandum opinion, the district court found that the 12(N) statement was deficient in form and content, but it also decided that these deficiencies were by no means dispositive.

In Kemper's view, Feliberty's procedural shortcomings made a substantial difference to the district court. Specifically, it argues that these shortcomings led the district court to accept Kemper's version of the facts, and it maintains that we, like the district court, should view the record through the particular lens of its 12(M) statement. To be sure, the memorandum opinion issued below suggests that the district court did see things Kemper's way at first. This approach to the record would have been entirely proper if Feliberty had failed to provide a 12(N) statement; we have repeatedly held that district courts have broad discretion to enforce rule 12(N) strictly. See *Schulz v. Serfilco, Ltd.*, 965 F.2d 516, 519 (7th Cir.1992). But the minute order amending the memorandum opinion clearly asserts that procedural issues are not dispositive here. To accept Kemper's version of the facts would have been dispositive. Hence, if the deficiencies in Feliberty's 12(N) statement had compelled acceptance of Kemper's version of the facts, the district court would not have abjured a procedural disposition. Therefore, we infer that

the district court ultimately decided that Feliberty did not violate rule 12(N). Moreover, we find no abuse of discretion in this decision.

### B.

The fundamental basis for the district court's decision was its conclusion that Feliberty's own statements proved the absence of any genuine dispute. To be specific, the district court looked at Feliberty's complaint and a few pieces of evidence in the record and concluded that Feliberty had effectively admitted two facts that undermined his own case: that typing was an essential function of his job, which he could no longer perform under any circumstances; and that Kemper had provided him with the accommodation that he had requested. Having found such an admission, the district court decided that Feliberty would not be able to persuade a reasonable jury that Kemper had discriminated against him.

The district court relied upon several pieces of evidence to conclude that the parties did not have a genuine dispute about whether typing was an essential function of the Medical Director's position. As the district court read it, Feliberty's complaint admitted that his job required him to spend his day typing. Moreover, the district court found that other evidence was consistent with this admission. It pointed to the affidavit in which Feliberty recounted that he typed for six to eight hours each day, and it referred to Kemper's official description of the Medical Director's duties stating that "the ability to handle case files is essential." Because other evidence showed that Kemper stored its case files on computers, this job description contributed to the district court's determination that the use of a computer keyboard was essential.

Feliberty argues that the district court did not conduct this reading of the evidence according to the standards for summary judgment. He maintains that, when viewed in the light most favorable to him, the evidence in the summary judgment record does not support this determination. Kemper responds by contending that the elements of the record identified by its motion and by the

district court do demonstrate the absence of a genuine dispute about the essential functions of a medical director at Kemper.

■ We agree with Feliberty that the district court did not properly evaluate the evidence in the record. In finding that the complaint included a judicial admission about those essential functions, the district court relied on a misleading quotation from the complaint, albeit one supplied by Kemper's 12(M) statement. As the district court noted, Paragraph 8 of Feliberty's complaint included the statement, "[h]is work required the use of a keyboard;" but this portion of the complaint did not stop there. As Feliberty noted in his 12(N) statement, the entire sentence read: "His work required the use of a keyboard at a video display terminal at a non-adjustable, inappropriate, nonergonomic work station." The complete sentence hardly constitutes an admission about the essential functions of Feliberty's position; it is, more accurately, a concrete description of the office environment at Kemper. It provided no real information about the nature of the duties that Kemper imposed upon its medical directors. Similarly, Feliberty's discussion of the amount of time he actually spent at a keyboard does not eliminate any dispute about which aspects of those duties were essential. The evidence in the record did show that Kemper's Medical Director had to review case files and that the case files were stored on a computer. But Kemper has not identified any evidence showing that it was essential for the Medical Director to retrieve those files himself by typing at a keyboard. In short, the record is not sufficiently developed to permit the firm conclusion that there is no factual dispute about the essential functions of Feliberty's job.

The district court similarly erred in its evaluation of the evidence bearing upon the second crucial factual issue: whether Kemper provided a reasonable accommodation for Feliberty's condition. The record contained a limited amount of evidence relevant to this question. In an affidavit submitted with his response to Kemper's summary judgment motion, Feliberty averred that, in April 1993, he asked his supervisors to change his computer workstation to accommodate his carpal tunnel syndrome, and they initially declined these requests. He also asserted that the pain in his hands worsened as he was compelled to type at his old, unmodified keyboard. As other evidence indicates, Kemper did eventually respond to Feliberty's request for an accommodation. That evidence consists of Feliberty's formal charge filed with the EEOC in which he stated: "On April 22, 1993 I advised my Supervisor of my medical malady and requested an accommodation for my condition. It was not granted until late May 1993. By this time my condition worsened and[,] now I am almost completely disabled." Unhappily, this is the only evidence in the record about Feliberty's request and Kemper's response.[1]

The district court concluded that "[a]bsent evidence that the accommodation which the plaintiff received differed substantially from that which he requested, the plaintiff has failed to establish that a genuine issue of material fact exists as to the reasonableness of the accommodation." The district court's conclusion thus appears to rest on the principle that, as a matter of law, the accommodation provided by an employer is reasonable unless it differs substantially from the accommodation that an employee requested. Feliberty, of course, rejects this principle, contending that the ADA does not always recognize as reasonable any accommodation made in compliance with an employee's request. For its part, Kemper endorses this.

---

1. In his appellate brief, Feliberty identifies an additional piece of evidence that he thinks should bear on our consideration of this point. He refers to an affidavit from the EEOC officer who listened to his oral recitation of his charges and who drafted his formal, written complaint. In this affidavit, the officer states that her notes of her meeting with Feliberty contain a description of the accommodation that Kemper provided: "5–93 desk on wheels, cart & put in my office." Feliberty did not, however, submit this affidavit before the district court entered summary judgment; he submitted it along with his motion for reconsideration. Because he did not contend that the officer's affidavit was newly discovered evidence which he could not have introduced during the pendency of the summary judgment motion, the affidavit was not properly before the district court. See Publishers Resource, Inc. v. Walker–Davis Publications, Inc., 762 F.2d 557, 561 (7th Cir.1985). Therefore, we cannot consider it as part of the summary judgment record.

principle, arguing that this is a well-established tenet of the ADA.

Determining whether an accommodation is reasonable depends, to a significant extent, upon determining whether the employer has acceded to the disabled employee's request. The legislative history of the ADA, the EEOC's regulations promulgated under it and the cases that interpret it all suggest that employers should pay careful attention to employees' requests for accommodations. *See, e.g.,* H.R. Doc. No. 101–485, 101st Cong., 2d Sess., pt. III, at 39 (1990), *reprinted in* 1990 U.S.C.C.A.N. 267, 462; 29 C.F.R.App. § 1630.9; *Beck,* 75 F.3d at 1134–35. But an employer's proffered accommodation is not reasonable simply because it fulfills the employee's request. Because he has first-hand knowledge of both his disability and his job, an employee has substantial responsibility for identifying the nature of a reasonable accommodation; but, as we have recently pointed out, "[t]he employer has at least some responsibility in determining the necessary accommodation." *Beck,* 75 F.3d at 1135. The determination of a reasonable accommodation is a cooperative process in which both the employer and the employee must make reasonable efforts and exercise good faith. *Id.* at 1135–36. The allocation of that responsibility may vary with the circumstances of a case, but the employer is never completely free from some measure of responsibility. *Id.*

Kemper contends that Feliberty bears virtually all of the responsibility for defining a reasonable accommodation in this case because he is a physician. According to Kemper, Feliberty's medical knowledge, combined with his knowledge of the requirements of his job, provided him with all of the information necessary to request a reasonable accommodation. Undoubtedly, circumstances may exist where the employee has the laboring oar in identifying a reasonable accommodation; but an employer is not totally relieved of responsibility simply because its employee has unusual expertise. *Id.* Moreover, in this case, there is nothing to suggest that Feliberty's own medical background made him peculiarly qualified to determine the precise method of making a rea-

sonable accommodation for carpal tunnel syndrome. Therefore, we cannot accept Kemper's argument that its deference necessarily reflected good faith and made its accommodation reasonable as a matter of law.

Moreover, we cannot even conclude that the record reflects no genuine dispute on the question whether Kemper did indeed defer to Feliberty's request. If a jury were to consider the currently available evidence about Kemper's response to Feliberty's request, it could make a reasonable inference that Kemper did not take Feliberty's condition or his request seriously. As Kemper argues, reasonableness does not depend solely on effectiveness or timeliness; in some circumstances, an accommodation can be reasonable even if it does not work as well as expected or if it takes a while to take effect. But reasonableness does depend on a good-faith effort to assess the employee's needs and to respond to them. The record contains evidence showing that Kemper made *some* response to Feliberty's request; but this evidence certainly does not dispositively undermine Feliberty's allegation that the response was inadequate or was not made in good faith. Given that Feliberty's allegations regarding reasonable accommodation are still viable, summary judgment was inappropriate.

### III.

In his reply brief to this court, Feliberty included a collection of documents as an appendix. He had not submitted these documents as evidence in the district court. As such, they are not properly before us and are consequently stricken.

### IV.

The appellee's motion to strike the documents is GRANTED. The judgment of the district court is REVERSED, and the case is REMANDED for further proceedings not inconsistent with this opinion.