In the
United States Court of Appeals
For the Seventh Circuit

No. 99-3803

Lionel Bordelon,

Plaintiff-Appellant,

v.

Chicago School Reform
Board of Trustees,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern
Division.
No. 98 C 1932--Robert W. Gettleman, Judge.

Argued September 21, 2000--Decided November
15, 2000

   Before Rovner, Diane P. Wood, and Williams,
Circuit Judges.

   Williams, Circuit Judge.  Lionel Bordelon
is employed by the Chicago School Reform
Board of Trustees ("the Board") as
principal of Kozminski Community Academy,
a Chicago public school. This lawsuit
arises from his involuntary transfer to
administrative duties at the Board's
Department of Schools and Regions. He
sued the Board under 42 U.S.C. sec. 1983,
seeking an injunction and damages for
violation of his Fourteenth Amendment
right to due process. The district court
granted Bordelon's request for a
preliminary injunction, but granted
summary judgment to the Board on
Bordelon's claim for damages. Bordelon
appeals the district court's grant of
summary judgment to the Board. We affirm.

I
   Bordelon entered into a contract with
Kozminski Local School Council ("Local
School Council"), as agent for the Board,
to serve as principal of Kozminski
Community Academy for a four-year term
beginning July 1, 1995.  Under the

contract, Bordelon could be terminated only for cause (and other reasons not relevant here), and then only after being afforded the notice and hearing procedures prescribed by the Illinois School Code. See 105 Ill. Comp. Stat. 5/34-85. During the second year of his contract, the Local School Council charged Bordelon with various misdeeds, including violations of state and federal law, and recommended that the Board revoke his contract. After a lengthy investigation, the Board's chief executive officer, Paul Vallas, determined that many of the Local School Council's charges against Bordelon were unfounded, and concluded that those charges that were founded were insufficient to warrant Bordelon's removal as principal of Kozminski.

However, this did not end the matter. In March 1997, Bordelon was "temporarily" reassigned to administrative duties at the Board's Office of Schools and Regions (the "Central Office"). This transfer was accomplished without a hearing, pursuant to a Board rule that purportedly allows reassignment of principals if the Superintendent of Schools determines that it is in the best interest of the Chicago Public Schools. While assigned to the Central Office, Bordelon received the same pay and benefits he received as principal of Kozminski.

A year later, still assigned to the Central Office and unable to obtain information from the Board about the nature of the charges against him or any indication of when he would be returned to Kozminski, Bordelon filed suit against the Board for injunctive relief and damages. Bordelon claimed that the Board deprived him, without due process, of liberty and property interests when it transferred him to the Central Office. Bordelon claimed that he was damaged both by the transfer itself, and by Board statements to the media at the time of his transfer that indicated that he was still under investigation, when apparently, he was not./1

In June 1998, the district court held that Bordelon was entitled to a preliminary injunction based on his claim that his transfer to the Central Office deprived him, without due process, of his property interest in his position as

principal, and ordered Bordelon's reinstatement as principal of Kozminski. Bordelon v. Chicago Sch. Reform Bd. of Trustees, 8 F. Supp. 2d 779 (N.D. Ill. 1998)./2 In January 1999, the Local School Council renewed Bordelon's contract for an additional term.

After discovery, the Board moved for summary judgment, arguing that Bordelon could not establish any tangible loss of income, benefits, or employment opportunities as a result of the Board's conduct. The Board also moved to strike the statement filed by Bordelon pursuant to Northern District of Illinois Local Rule 12(N) in opposition to the Board's summary judgment motion. The district court granted the Board's motion to strike Bordelon's statement and also its motion for summary judgment. Bordelon then filed a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e), which the court denied.

On appeal, Bordelon asserts that the district court erred: (1) in striking his Local Rule 12(N) statement opposing summary judgment; (2) in denying his Rule 59(e) motion to alter or amend the judgment; and (3) in granting the Board's motion for summary judgment on the merits of his sec. 1983 due process claim. We address each of these claims in turn.

II
A.  Plaintiff's Rule 12(N) Statement

The Local Rules of the Northern District of Illinois impose certain requirements for supporting and opposing motions for summary judgment. In particular, the moving party is required to support its summary judgment motion with "a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law." N.D. Ill. Local Rule 12(M)(3)./3  The opposing party must submit a statement responding to each numbered paragraph of the movant's statement, supporting any disagreement with "specific references to the affidavits, parts of the record, and other supporting materials relied upon." N.D. Ill. Local Rule 12(N)(3)(a). Unless controverted in this manner in the opponent's 12(N) statement, all material facts set forth in the movant's statement are deemed admitted. N.D. Ill. Local Rule

12(N)(3)(b).

We have noted before the important function served by local rules that structure the summary judgment process, like Local Rules 12(M) and (N) in the Northern District of Illinois. See Markham v. White, 172 F.3d 486, 490 (7th Cir. 1999). These rules "assist the court by organizing the evidence, identifying undisputed facts, and demonstrating precisely how each side proposed to prove a disputed fact with admissible evidence." Id. Given their importance, we have consistently and repeatedly upheld a district court's discretion to require strict compliance with its local rules governing summary judgment. Midwest Imps., Ltd. v. Coval, 71 F.3d 1311, 1316 (7th Cir. 1995); Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 922 (7th Cir. 1994) (collecting cases).

The district court found that Bordelon's 12(N) statement contained evasive and contradictory answers and legal argument, and struck the statement in its entirety. As a consequence, the court accepted the material facts in the Board's statement as true, as it was entitled to do under Local Rule 12(N)(3). We review the district court's rulings on Rule 12(N) statements for an abuse of discretion. Day v. N. Ind. Pub. Serv. Corp., 164 F.3d 382, 384 (7th Cir. 1999); Feliberty v. Kemper Corp., 98 F.3d 274, 278 (7th Cir. 1996). An examination of Bordelon's 12(N) statement convinces us that the district court did not abuse its discretion in striking it. The statement is so full of argument, evasion, and improper denials that it defeats the whole point of Local Rule 12(N)--to identify just what facts are actually in dispute.

One example singled out by the district court is typical of Bordelon's statement. In response to the Board's assertion that "Bordelon was assigned to administrative duties in the Office of Schools and Regions from March 11, 1997, to June 22, 1998," Bordelon replied:

Denied. This Honorable Court has already held that "Nothing in Section 1023.8(b) [of the Illinois Schools Code] gives defendant the right to transfer plaintiff to a "paper shuffler" position in the Central Office. Judge Ashman held, and this court agreed, that the two positions

are not similar for purposes of the act." As Miguel Rodriguez stated at his deposition, Mr. Bordelon's "office" at Camp Beverly, was in an "old warehouse" "in open space" with one large room with dividers and Mr. Bordelon's "space" was "on the way to the men's bathroom." (M. Rodriguez Dep. pp. 16, 55.) Plaintiff had no "duties" and was not evaluated. (Vallas Dep. p. 53)

While this response appears to take issue with the Board's reference to "administrative duties," Bordelon was required at the very least to respond to the Board's assertion that he was reassigned to the Central Office during the identified period. And because he admitted as much in his deposition, he was not entitled to deny this fact in his 12(N) statement. Indeed, as the district court noted, Bordelon's assignment to the Central Office is at the heart of his entire claim. This pattern of evasive denials along with improper argument is repeated throughout his statement.

In defense of his 12(N) statement, Bordelon first argues that his responses were technically in compliance with Rule 12(N) because he did either admit or deny each of the Board's assertions and provided citations to the record. However, Rule 12(N) is not satisfied by evasive denials that do not fairly meet the substance of the material facts asserted. It is also not satisfied by citations to the record that support legal argument rather than controvert material facts. In other words, for a 12(N) statement to be useful, denials must be made only if the material fact asserted is actually in dispute. And if a material fact is not disputed (or if there is no evidence that controverts the fact), the district court is entitled to know that up front, without first having to examine citations to evidence having only marginal bearing on the question./4 Therefore, we agree with the district court that Bordelon's statement was not in compliance with Rule 12(N).

Bordelon next claims that the penalty imposed by the district court, striking the entire statement, was too harsh, and that the court should instead have stricken only the offending material. We

think, however, that the purpose of Local Rules 12(M) and (N)--to require the parties to identify the disputed issues in a concise format--would be defeated if the court were required to wade through improper denials and legal argument in search of a genuinely disputed fact. Under these circumstances, we find no abuse of discretion in the district court's decision to strike Bordelon's statement in its entirety.

Finally, Bordelon asserts that even if the court disregarded his 12(N) statement, it should have considered the affidavits that were filed with his summary judgment response. If Bordelon were correct, then Local Rules 12(M) and (N) would have no effect. Under these rules, the district court is entitled to limit its analysis of the facts on summary judgment to evidence that is properly identified and supported in the parties' statements. See Markham, 172 F.3d at 490; Bradley v. Work, 154 F.3d 704, 708 (7th Cir. 1998); Knoblauch v. DEF Express Corp., 86 F.3d 684, 690 (7th Cir. 1996). Because the district court found that Bordelon's 12(N) statement was entirely non-compliant, it does not matter that evidence may have existed in the record to create a disputed issue of fact. We think that Local Rule 12(N)(3) makes this plain when it prescribes the consequence for noncompliance--the movant's assertions of material fact are deemed admitted--and this consequence applies regardless of what contrary evidence is in the record. Accordingly, the district court was entitled to disregard Bordelon's affidavit evidence.

B.  Motion to Alter or Amend the Judgment

Bordelon also appeals the district court's denial of his motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e). Rule 59(e) allows the movant to bring to the district court's attention a manifest error of law or fact, or newly discovered evidence. LB Credit Corp. v. Resolution Trust Corp., 49 F.3d 1263, 1267 (7th Cir. 1995). It "does not provide a vehicle for a party to undo its own procedural failures, and it certainly does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to the judgment." Moro v. Shell Oil Co., 91

F.3d 872, 876 (7th Cir. 1996). We review the district court's denial of Bordelon's Rule 59(e) motion for an abuse of discretion. Id.

Bordelon first claims that the court abused its discretion in not giving him an opportunity to amend his Local Rule 12(N) statement. However, Bordelon never sought leave to amend, even after the Board moved to strike his statement, and only suggested the possibility in his Rule 59(e) motion after the adverse ruling on summary judgment. Under these circumstances, we think the district court was within its discretion in refusing to allow Bordelon to use Rule 59(e) to "undo" the shortcomings of his Local Rule 12(N) statement.

Bordelon next claims that the district court should have reconsidered its summary judgment decision in light of the affidavit of Bordelon's expert, Dr. Julius Menacker, which Bordelon submitted more than two months after his response to the Board's motion for summary judgment, but before the court issued its summary judgment decision. Bordelon offered no explanation in his Rule 59(e) motion (or in his briefs on appeal) why the affidavit could not have been offered earlier. At oral argument, Bordelon's counsel referred to difficulties in obtaining affidavit testimony from education professionals during the summer months, but as far as we can tell, this difficulty was never brought to the attention of the district court. Accordingly, the district court was within its discretion in refusing to allow Bordelon to supplement the record through his Rule 59(e) motion. See Moro, 91 F.3d at 876 (upholding denial of Rule 59(e) motion that urged consideration of late-filed affidavits).

C.  Due Process Claim

We turn now to the merits of the district court's decision granting the Board summary judgment, a decision we review de novo. See Rodriguez v. City of Chicago, 156 F.3d 771, 775 (7th Cir. 1998). In support of his due process claim, Bordelon argues that he had a protected property interest in his job as principal of Kozminski. He claims he was deprived of that interest when the Board transferred him, without a hearing, to

administrative duties in the Central Office. Bordelon also claims that the transfer and its attendant publicity violated his "liberty interest," which we understand to mean his liberty interest in pursuing the occupation of his choice. He seeks compensation for harm to his home life, health, and reputation, and for the loss of professional satisfaction and future job opportunities caused by the transfer and adverse publicity. We hold that Bordelon has not offered evidence that would allow a jury to find in his favor on either a property or liberty interest theory, and therefore affirm the district court's grant of summary judgment in favor of the Board.

1. Deprivation of Property Interest

Bordelon's contract gave him a right to his position as principal for four years, subject only to removal for cause. Therefore, we agree with the district court that Bordelon had a property interest in completing his contract in accordance with its terms. See Head v. Chicago Sch. Reform Bd. of Trustees, 225 F.3d 794, 803 (7th Cir. 2000); Jones v. City of Gary, Ind., 57 F.3d 1435, 1440-41 (7th Cir. 1995).

However, to be actionable under the due process clause, the deprivation of a public employee's property interest in continued employment must be more than de minimis. Head, 225 F.3d at 803; Swick v. City of Chicago, 11 F.3d 85, 87 (7th Cir. 1993). "[P]urely dignitary or otherwise nonpecuniary dimensions of employment" are not property interests protected by the due process clause of the Fourteenth Amendment. Swick, 11 F.3d at 87; see also Crim v. Bd. of Educ., 147 F.3d 535, 546-47 (7th Cir. 1998). Therefore, to recover for a deprivation of a property interest, Bordelon must show some economic loss from the Board's actions, or at least establish an identifiable impact on his future income or economic benefits. Head, 225 F.3d at 803; Swick, 11 F.3d at 86-87.

It is undisputed that, during his assignment to the Central Office, Bordelon continued to receive his regular pay and benefits. Bordelon argues, however, that he suffered a sufficient deprivation of his property interest because the Board's conduct caused harm

to his home life, health, and reputation, and resulted in a loss of professional satisfaction and future job opportunities.

As an initial matter, we note that, because the district court struck Bordelon's 12(N) statement, most of the evidence relating to these alleged injuries was not before the court, and instead, the material facts in the Board's 12(M) statement were deemed admitted./5 But even consideringall the evidence that Bordelon offers in support of his claim (including the evidence cited in his non-compliant 12(N) statement and the affidavit submitted two months after his summary judgment response), Bordelon's evidence would not permit a reasonable jury to find that he suffered any direct or indirect pecuniary loss caused by the Board's actions.

First, the loss of professional satisfaction and damage to personal relationships, reputation, and health, though painful to the plaintiff, are plainly not pecuniary injuries. Whether or not Bordelon could recover for these injuries as damages incidental to a deprivation of his property interest, he must first prove a direct or indirect economic harm to establish an actionable deprivation.

Second, although it is conceivable that his reassignment to the Central Office could impact Bordelon's future job opportunities in a way that could establish an actionable deprivation of property, see Head, 225 F.3d at 803, Bordelon has failed to offer evidence sufficient to establish a genuine issue of fact as to any such impact. For example, he offered no evidence that he sought and was denied any employment opportunities as a result of the Board's actions, and it is undisputed that his contract as principal was renewed for an additional four-year term./6
Because Bordelon failed to offer evidence sufficient to allow a jury to find any direct or indirect economic harm as a result of the Board's conduct,/7 the Board was entitled to summary judgment on Bordelon's claim for deprivation of his property interest.

2. Deprivation of Liberty Interest

If the character and circumstances of a public employer's stigmatizing conduct or statements are such as to have destroyed an employee's freedom to take advantage of other employment opportunities, the employee can bring suit based on the deprivation of his freedom to pursue the occupation of his choice, a liberty interest protected by the due process clause of the Fourteenth Amendment. Olivieri v. Rodriguez, 122 F.3d 406, 408 (7th Cir. 1997). It is not enough that the employer's stigmatizing conduct has some adverse effect on the employee's job prospects; instead, the employee must show that the stigmatizing actions "make it virtually impossible for the employee to find new employment in his chosen field." Head, 225 F.3d at 801; see Olivieri, 122 F.3d at 408.

Because Bordelon's contract as principal of Kozminski was renewed, he cannot show that it is "virtually impossible" for him to work in his chosen field. See Lawson v. Sheriff of Tippecanoe County, 725 F.2d 1136, 1139 (7th Cir. 1984) (observing that an offer of re-employment at an equivalent level would negate a deprivation of plaintiff's liberty interest). Thus, even crediting all of Bordelon's evidence about the effects of the Board's actions on his personal and professional reputation (no matter how speculative, and whether or not that evidence was before the court on summary judgment), he cannot establish a deprivation of his freedom to pursue his chosen occupation, and his liberty interest claim must fail as a matter of law.

III

We conclude by noting that while we have not found an actionable deprivation of property or liberty, this is not to say that we are unsympathetic to Bordelon's claims, but not all torts or contract breaches committed by government entities are constitutional or civil rights violations with redress in federal court.

Affirmed.

/1 Bordelon also brought a state law claim for breach of contract, but has not asserted any error with respect to that claim.

/2 The preliminary injunction is not before us on appeal, and we therefore offer no opinion on whether it was properly granted.

/3 While the motion for summary judgment was pending below, the Northern District of Illinois revised and renumbered its local rules. Local Rule 12(M) was reclassified as Rule 56.1(a), and Rule 12(N) was reclassified as Rule 56.1(b). We refer to these rules by the earlier designations, the convention used by the district court and by the parties in their briefs on appeal.

/4 As is apparent from the quoted response, Bordelon believes that he was entitled to support his denials with references to the findings and legal conclusions made by the district court at the preliminary injunction stage. But a court's findings and conclusions at the preliminary injunction stage are by nature preliminary. They are typically based on an incomplete record, using a different standard (likelihood of success on the merits), and therefore are not binding at summary judgment. See Thomas & Betts Corp. v. Panduit Corp., 138 F.3d 277, 292 (7th Cir. 1998). Accordingly, Bordelon was not entitled to rely on these findings, but instead was required to cite to affidavits or other record evidence to establish disputed issues of material fact.

/5 Ordinarily, in reviewing summary judgment, we construe the facts in the light most favorable to the non-movant. But because the district court struck Bordelon's 12(N) statement, we, like the district court, accept as true the Board's statement of material facts. See Feliberty, 98 F.3d at 277-78; Midwest Imps., 71 F.3d at 1313; Johnson v. Gudmundsson, 35 F.3d 1104, 1108 (7th Cir. 1994).

/6 The untimely affidavit of Bordelon's expert, Dr. Menacker, which describes the likely effect of Bordelon's reassignment to the Central Office on Bordelon's future job opportunities, does not change our opinion. Menacker's affidavit lacks a proper factual basis and is too speculative to create a genuine issue of material fact. Menacker did not survey actual employers about Bordelon's credentials, or otherwise provide a factual basis for his predictions about future harm. Furthermore, Menacker failed to take into account the fact that Bordelon's contract as principal was renewed, or analyze what impact that re-employment would have on other employers' evaluation of Bordelon, or indeed on Bordelon's career in the Chicago Public Schools.

/7 At the preliminary injunction stage, Bordelon's likelihood of success on the merits (and therefore his entitlement to the injunction) was

based, in part, on Bordelon's allegations of damage to his future job opportunities. At summary judgment, however, Bordelon must do more than rely on allegations to show an actionable deprivation of a property interest; he must support those allegations with evidence sufficient to allow a jury to find that he suffered that economic harm. See Fed. R. Civ. P. 56(e).