NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued April 29, 2014
Decided May 8, 2014

**Before**

WILLIAM J. BAUER, *Circuit Judge*

JOEL M. FLAUM, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

Nos. 13-2465 & 13-3140

| | |
|---|---|
| DARREYL M. YOUNG-GIBSON, <br> *Plaintiff-Appellant*, <br><br> *v.* <br><br> BOARD OF EDUCATION OF THE <br> CITY OF CHICAGO, <br> *Defendant-Appellee*. | Appeals from the United States District Court for the Northern District of Illinois, Eastern Division. <br><br> No. 11 C 8982 <br><br> Virginia M. Kendall, <br> *Judge*. |

## O R D E R

Darreyl Young-Gibson ("Young-Gibson") was hired as principal at Percy L. Julian High School in Chicago but soon crossed swords with the Board of Education on a range of issues. She was suspended twice, reassigned to an administrative post away from the high school, and eventually fired. Young-Gibson then sued the Board under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1983. She claimed that the Board had fired her

because she is African American and female, and to retaliate for various protected activities. Young-Gibson also claimed that the Board had violated her right to due process by reassigning her to the administrative post without notice and a hearing. The district court granted summary judgment for the Board. On appeal Young-Gibson abandons her discrimination claims, but argues that her retaliation and due-process claims should have survived the Board's motion for summary judgment because of what she describes as the "temporal proximity" of events. (Although she filed two notices of appeal, they are duplicative, and we have analyzed the two appeals as one.) We affirm the district court's judgment because Young-Gibson introduced no evidence from which a jury reasonably could conclude that the Board retaliated against her or that she suffered any economic harm from being reassigned to an administrative post.

Young-Gibson was hired as principal of Julian High School on a four-year contract that commenced in January 2008. That same month the CEO of the Chicago Public Schools suspended "T.D.," a Julian employee who was under investigation for "inappropriate interactions" with students. Young-Gibson wrote to the CEO, informing him that she had independently found the allegations against T.D. to be "false, baseless, and uncorroborated" and that she was therefore "rescinding" the suspension and "restoring [T.D.] to his position" at the school.

Young-Gibson then was summoned to a pre-discipline hearing for repeatedly allowing T.D. into the school during the investigation and for being "grossly insubordinate" to a supervisor about issues of student safety. As a result Young-Gibson received a 20-day, unpaid suspension in February 2008, and the Board of Education issued a resolution in April warning her that she would be dismissed if the insubordination continued.

Meanwhile, CPS had announced in March 2008 that it was designating Julian as "on probation," the same status assigned the school the previous year under CPS's "School Probation and Remediation Policy." Young-Gibson was told that, as a result of Julian's probationary status, she could be removed as principal for failing to make adequate progress in correcting deficiencies. *See* 105 ILL. COMP. STAT. 5/34-8.3(d).

Young-Gibson responded by filing a charge of discrimination in April 2008 with the Equal Employment Opportunity Commission and the Illinois Department of Human Rights. She accused the Board of discriminating against her because of her race and sex and in retaliation for advocating on behalf of an employee falsely accused of sexual harassment.

Six months later, while Young-Gibson's administrative complaint remained pending, she was summoned to another pre-discipline hearing for "gross insubordination." This time she was suspended without pay for 10 days in December 2008 for "refusing to respond" to a supervisor's query about a counselor at the school and ignoring a supervisor's directive to reply to parents' concerns regarding textbooks, lockers, and student IDs.

Then in March 2009, the Illinois State Board of Education placed Julian on probation because of the school's "prolonged noncompliance with legal and regulatory requirements in the area of Special Education Services" and noncompliance "in the area of Health/Life Safety." To "avoid any further recognition action," the state agency warned, Julian must correct its deficiencies by the end of the following school year.

Days after the state agency notified CPS of Julian's probationary status, CPS "temporarily reassigned" Young-Gibson to an administrative post at a regional office. The elected Local School Council with oversight over Julian recommended to the CEO that Young-Gibson be removed "for cause." The CEO then informed Young-Gibson that a hearing would be conducted to determine whether she should be removed as principal and her contract terminated. Weighing in favor of removal, the CEO told her, were Julian's probationary status and the warning the Board had issued her the previous year. After a hearing in August 2009, the hearing officer concluded that state law permitted the Board to remove Young-Gibson as principal because "she was not adequately addressing the issues that have chronically plagued Julian, in large part because of her failure or refusal to work with her superiors." *See* 105 ILL. COMP. STAT. 5/34-8.3. Two months later the Board removed Young-Gibson and terminated her contract.

Young-Gibson sought review of the Board's decision in the Circuit Court of Cook County, also alleging that the Board had breached her employment contract. The circuit court treated her request for administrative review as a petition for a writ of certiorari and in October 2010 ordered her reinstated as Julian's principal. But the Board took an interlocutory appeal to the Appellate Court of Illinois, and in September 2011 the appellate court reversed, confirming the Board's decision to remove Young-Gibson as principal under 105 ILL. COMP. STAT. 5/34-8.3. *Young-Gibson v. Bd. of Educ. of City of Chicago*, 959 N.E.2d 751, 764 (Ill. App. 2011). The appellate court rejected Young-Gibson's contention that the Board had been required to, but did not, comply with 105 ILL. COMP. STAT. 5/34-85, which governs the removal of Chicago teachers and principals for cause. *Id.* Rather, the court concluded, the Board properly had followed the procedural requirements of

§ 5/34-8.3 in placing Julian on probation and then removing Young-Gibson as principal. *Id.* The Supreme Court of Illinois denied Young-Gibson leave to appeal.

By then the EEOC had concluded its investigation and issued Young-Gibson a right-to-sue letter, more than three years after she filed her administrative charge. Young-Gibson then brought this pro se action in December 2011 alleging that she was fired because of her race and sex. She also alleged that the Board had suspended, reassigned, and discharged her in retaliation for protected activities. Her complaint mentions only Title VII, *see* 42 U.S.C. §§ 2000e-2(a)(1), 2000e-3(a), but the Board also understood Young-Gibson to claim that reassigning her to the administrative post at the regional office had violated her right to due process.

The district court rejected the Board's defense that Young-Gibson's claims were precluded by the state-court litigation; the court reasoned that only a final judgment has preclusive effect and yet the state circuit court had never ruled on Young-Gibson's claim for breach of contract. At summary judgment the Board understood the plaintiff to be alleging that she was retaliated against for challenging the CEO's suspension of T.D., sending staff to a special-education conference, and filing her administrative charge of discrimination. Young-Gibson responded that she "was fired because she opposed and exposed the discriminatory treatment of an African-American male Julian employee."

The district court sided with the Board at summary judgment. The court first concluded that Young-Gibson lacks evidence that would allow a jury reasonably to conclude under the direct or indirect methods that she was discharged because of her race or sex. Although Young-Gibson had touted her successes as Julian's principal—a grant the school received from the Japanese Chamber of Commerce and increases in its graduation rate and in scores on some standardized tests—the court reasoned that Young-Gibson did not dispute her repeated insubordination, her defiance of the CEO's order suspending T.D., or her failure to make adequate academic progress on the deficits that led to Julian's probation.

On the retaliation claim, which Young-Gibson tried to prove through the direct method, the district court first concluded that the plaintiff's letter to the CEO was not protected activity under Title VII because that letter says nothing suggesting that Young-Gibson thought T.D.'s suspension was discriminatory. The court also rejected the argument that her use of discretionary funds to send staff to a special-education conference was protected activity. That left her April 2008 administrative charge, which the court

concluded was protected activity under Title VII. But the only evidence she submitted to show retaliation was timing, the court said, and a jury could not reasonably conclude that the timing was suspicious: Young-Gibson's first suspension preceded her administrative charge, the Board imposed her second suspension 7 months after she filed the charge, and she was fired another 11 months after that.

Finally, in granting summary judgment on the due-process claim, the district court reasoned that Young-Gibson's reassignment to the regional office did not affect a constitutionally protected property interest because she continued receiving her full principal's salary and benefits. And although she asserted (without submitting any evidence) that she lost her eligibility for a travel allowance when she was reassigned, the court concluded that Young-Gibson had not shown that she suffered any economic harm as a result.

On appeal, only Young-Gibson's due-process and retaliation claims are properly before us. In her reply brief Young-Gibson does mention her claim that she was fired because of her race and sex. She also spoke about that claim at oral argument. Yet a claim mentioned for the first time in a reply brief is waived, *see George v. Kraft Foods Global, Inc.*, 641 F.3d 786, 790 (7th Cir. 2011); *United States v. Lupton*, 620 F.3d 790, 807 (7th Cir. 2010), and a claim that has been waived cannot be revived at oral argument, *see Fluker v. Cnty. of Kankakee*, 741 F.3d 787, 791 n.3 (7th Cir. 2013); *Veluchamy v. FDIC,* 706 F.3d 810, 816–17 (7th Cir. 2013). Thus, we decline to address Young-Gibson's arguments about her discrimination claim.

As an initial matter, the Board argues that the doctrine of claim preclusion bars Young-Gibson's due-process claim because she could have pursued that claim in the state-court litigation. (The Board did not try to assert claim preclusion as a bar to Young-Gibson's retaliation claim until oral argument, which, as we've said, is too late. *See Fluker*, 741 F.3d at 791 n.3; *Baird v. Davis*, 388 F.3d 1110, 1114 (7th Cir. 2004).) The doctrine of claim preclusion applies in Illinois only if three prerequisites are established: "(1) a final judgment on the merits rendered by a court of competent jurisdiction; (2) an identity of the causes of action; and (3) an identity of parties or their privies." *Walczak v. Chicago Bd. of Educ.*, 739 F.3d 1013, 1016 (7th Cir. 2014); *see Cooney v. Rossiter*, 986 N.E.2d 618, 621 (Ill. 2012). The district court rejected this affirmative defense, *see Young-Gibson v. Bd. of Educ. of City of Chicago*, No. 11 C 8982, 2013 WL 4606785, at *5 (N.D. Ill. Aug. 29, 2013), on the understanding that the state-court litigation was ongoing, a point that the Board nowhere acknowledges in its brief. And as far as we can tell, the state litigation appears to be pending even now. The Board does not assert any error in the district court's reasoning

that claim preclusion could not apply without a final judgment; thus, the Board has waived any appellate argument about that analysis. *See G & S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 544 (7th Cir. 2012); *Crawford v. Countrywide Home Loans, Inc.*, 647 F.3d 642, 651–52 (7th Cir. 2011).

Young-Gibson first argues that the district court erred in granting summary judgment on her retaliation claim under the direct method of proof. She contends that her attempted rescission of T.D.'s suspension was protected activity because, she says, "writing a letter complaining of disparate treatment of an employee constitutes protected activity under Title VII." She says on appeal that she believed that T.D.'s suspension was discriminatory because CPS had transferred to another position, instead of suspending, a Caucasian teacher who was under investigation for allegedly molesting a male student. Yet Young-Gibson's only evidence at summary judgment concerning her opposition to the suspension was the letter she wrote to the CEO denouncing the treatment of T.D. as "mean-spirited, vicious, and malicious." That letter does not even hint at a belief (by Young-Gibson or T.D.) that T.D.'s suspension was racially motivated.

Title VII makes it unlawful for an employer "to discriminate against any individual" because of the "individual's race, color, religion, sex, or national origin," 42 U.S.C. § 2000e-2(a)(1), or to discriminate against an employee because the employee has "opposed any practice made an unlawful employment practice by [Title VII]," *id.* § 2000e-3(a); *see Talanda v. KFC Nat. Mgmt. Co.*, 140 F.3d 1090, 1096 (7th Cir. 1998) (concerning claim of retaliation based on plaintiff's opposition to discrimination by employer against another employee). Thus, a jury could not reasonably find that Young-Gibson's opposition to the suspension was protected activity given that she submitted no evidence showing that she had opposed the suspension because she believed reasonably and in good faith that it was discriminatory. *See Fischer v. Avanade, Inc.*, 519 F.3d 393, 409 (7th Cir. 2008) (explaining that complaint to employer "must indicate" that "discrimination occurred because of sex, race, national origin, or some other protected class" (quotation marks and citation omitted)); *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663–64 (7th Cir. 2006) ("[C]omplaining in general terms of discrimination or harassment, without indicating a connection to a protected class or providing facts sufficient to create that inference, is insufficient."); *Johnson v. ITT Aerospace/Commc'ns Div. of ITT Indus., Inc.*, 272 F.3d 498, 501 (7th Cir. 2001) ("[I]t is not actionable retaliation to discipline an employee for filing a frivolous charge against the employer."); *Talanda*, 140 F.3d at 1096.

The Board suspended Young-Gibson for the first time shortly after she challenged T.D.'s suspension but before her other alleged protected activities; thus, her first suspension could not have been retaliatory. She does not assert any error in the district court's conclusion that her decision to send Julian's staff to a special-education conference was not a protected activity. That leaves her filing of an administrative charge of discrimination, which the Board concedes is a protected activity.

Young-Gibson maintains, without disputing the district court's reasoning, that a jury could reasonably find from the "temporal proximity" that her protected activities caused the Board to retaliate against her. Although rarely sufficient on its own, suspicious timing may be circumstantial evidence of retaliation. *Kidwell v. Eisenhauer*, 679 F.3d 957, 966 (7th Cir.), *cert. denied*, 133 S. Ct. 489, 184 (2012); *Leitgen v. Franciscan Skemp Healthcare, Inc.*, 630 F.3d 668, 675 (7th Cir. 2011). But the timing is not suspicious here. The significant delay between the time that Young-Gibson filed the administrative charge and her second suspension (7 months), reassignment (11 months), and discharge (18 months) would prevent a jury from reasonably concluding, based on "temporal proximity" alone, that the Board retaliated against her for filing the charge. *See Kidwell*, 679 F.3d at 967 ("[E]xtended time gaps alone militate against allowing an inference of causation based on suspicious timing."); *Leonard v. E. Ill. Univ.*, 606 F.3d 428, 432 (7th Cir. 2010) (6 months between events not suspicious); *Argyropoulos v. City of Alton*, 539 F.3d 724, 734 (7th Cir. 2008) (7-week interval not suspicious). Moreover, Young-Gibson did not dispute that after she filed the charge she continued to be insubordinate and that the state agency placed Julian on probation for its failure to comply with special-education and safety requirements. In light of these significant intervening events, a jury could not reasonably accept Young-Gibson's suspicious-timing argument. *See Kidwell*, 679 F.3d at 967 ("[T]he evidence shows that [plaintiff]'s own aberrant actions or other intervening circumstances led to the negative responses."); *Davis v. Time Warner Cable of Se. Wis., L.P.*, 651 F.3d 664, 675 (7th Cir. 2011) (same).

Young-Gibson also argues on appeal that a slew of other "circumstantial" evidence would allow a jury reasonably to conclude that the Board retaliated against her. She says that it was "disingenuous" for the Board to reassign her to an administrative post before students' standardized test scores and grades were determined at the end of the school year. She argues that the state agency "issued a bogus letter" in September 2008 stating that Julian's probationary status had worsened. She also appears to contend that Julian would have corrected its deficiencies and avoided probation had the state agency not waited 18 months to issue a report of its March 2007 review of the school. This "suspicious deviation

in policy" on the part of the state agency, she alleges, is somehow attributable to the Board. Furthermore, she asserts, the Board's failure to comply with the removal procedures of 105 ILL. COMP. STAT. 5/34-85 is circumstantial evidence of retaliation. She also says that a supervisor never evaluated the "principal performance goals" she developed or her implementation of the CPS School Improvement Plan for Advancing Academic Achievement. She asserts that a supervisor who disciplined her for failing to correct safety issues was actually unconcerned about safety because the supervisor "coerced" her to readmit a student who had threatened to bomb the school and shoot teachers. She also says that a supervisor testified falsely at Young-Gibson's removal hearing that Julian had been on probation for 4 years when Young-Gibson became principal.

Young-Gibson submitted no evidence in support of many of these assertions, some of which she presents for the first time on appeal. None of this is evidence that the Board retaliated against her. Moreover, the Illinois appellate court already has held that the Board was not required to comply with the procedures of § 5/34-85 when it discharged her. *Young-Gibson*, 959 N.E.2d at 764.

Young-Gibson further argues that at a hearing in February 2013 the district court did not give her "an opportunity to offer proof," including "omitted deposition pages and other documents in support of her case." Discovery had closed four months earlier, and Young-Gibson never moved to extend discovery. Yet she says now that she wished to submit additional evidence at the hearing but that the court ignored her while it discussed other matters with opposing counsel. If she wished to submit additional evidence, she should have filed a motion to that effect.[1]

Finally, Young-Gibson maintains on appeal that the Board violated her right to due process when, without notice or a hearing, it reassigned her to the administrative post at a regional office. By reassigning her, she says, the Board removed her as principal and terminated her principal's contract. Her contract, she contends, afforded her a constitutionally protected property interest in continued employment as Julian's principal during the four-year term of the contract. (She notes that the contract provides that reassignment is one method by which the agreement could be terminated.) To prevail on

---

[1] Young-Gibson added at oral argument that she recently filed a motion in the district court to supplement the record on appeal with additional testimony from her deposition. The district court has not yet ruled on that motion, but we are confident that the evidence, even if admissible on appeal, could not possibly be helpful.

this claim, Young-Gibson would have to establish a constitutionally protected property interest that was taken away without due process. *See Khan v. Bland*, 630 F.3d 519, 527 (7th Cir. 2010); *Barrows v. Wiley*, 478 F.3d 776, 780 (7th Cir. 2007).

Decisions from this court explain that a public jobholder with a contract guaranteeing continued employment in a specific position subject to removal only for cause has a property interest in fulfilling that contract in accordance with its terms. *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 530 (7th Cir. 2000); *Head v. Chicago Sch. Reform Bd. of Trs.*, 225 F.3d 794, 803 (7th Cir. 2000); *Jones v. City of Gary, Ind.*, 57 F.3d 1435, 1440–41 (7th Cir. 1995). Young-Gibson was under contract to serve as principal at Julian for four years but, in addition to being subject to removal for cause, also faced "removal, reassignment, layoff or dismissal" because of the school's probationary status. *See* 105 ILL. COMP. STAT. 5/34-8.3, 5/34-8.4. We could not find any decision, state or federal, discussing whether a contract permitting an Illinois teacher or administrator to be reassigned or fired because of a school's probationary status nevertheless gives that employee a property interest in continued employment in a specific position. But even if Young-Gibson's contract gave her such an interest, the district court properly concluded that she did not present evidence that would permit a jury reasonably to find that she suffered economic loss from the reassignment. *See Barrows*, 478 F.3d at 780 (explaining that plaintiff must demonstrate that deprivation caused "some economic loss" or "identifiable impact on [her] future income or economic benefits"); *Bordelon*, 233 F.3d at 530 ("[T]o be actionable under the due process clause, the deprivation of a public employee's property interest in continued employment must be more than *de minimis*."); *Swick v. City of Chicago*, 11 F.3d 85, 87 (7th Cir. 1993) (explaining that Due Process Clause does not protect "purely dignitary or otherwise nonpecuniary dimensions of employment"). Young-Gibson conceded that she received her full salary until the Board discharged her after a hearing, and though she alleged that during her reassignment the Board withheld a travel allowance available to principals, as the court reasoned, she did not submit evidence showing that she experienced any economic harm as a result. *See Deen v. Darosa*, 414 F.3d 731, 734 (7th Cir. 2005) ("[A] job action that causes no pecuniary loss whatsoever does not implicate the Constitution."). Thus, the district court properly concluded that a jury could not reasonably find that the Board violated her right to due process.

Young-Gibson's arguments on appeal lack merit. Accordingly, the judgment in appeal No. 13-2465 is AFFIRMED, and appeal No. 13-3140 is DISMISSED.