Richard **OSTERGREN** and Laura Ostergren, Plaintiffs,

v.

**VILLAGE OF OAK LAWN, a municipal corporation, Ernest F. Kolb, individually and as President of the Village of Oak Lawn, Jeanne Foody Galzin, individually and as Health and Sanitation Inspector of the Village of Oak Lawn, and John Does 1–20, Defendants.**

No. 99 C 7847.

United States District Court, N.D. Illinois, Eastern Division.

Dec. 18, 2000.

Cathleen M. Combs, Daniel A. Edelman, James O. Latturner, Edelman, Combs & Latturner, Chicago, IL, Eileen Sloan Newlin, Tressler, Soderstrom, Maloney & Priess, Chicago, IL, for Richard Ostergren, Laura Ostergren, plaintiffs.

Richard T. Wimmer, Lance C. Malina, James Vincent Ferolo, Michael T. Jurusik, David J. Fish, Klein, Thorpe & Jenkins, Ltd., Chicago, IL, for Village of Oak Lawn, Ernest F Kolb, Jeanne Foody Galzin, defendants.

## MEMORANDUM OPINION AND ORDER

CASTILLO, District Judge.

Plaintiffs Richard and Laura Ostergren sued the Village of Oak Lawn ("the Village"), its President Ernest F. Kolb, its Health and Sanitation Inspector Jeanne Foody Galzin, and John Does 1–20, for damages, alleging that Defendants deprived them of their right in property without due process of law in violation of 42 U.S.C. § 1983, and that Defendants violated the United States and Illinois Constitutions' takings clauses. Plaintiffs also assert state law claims for trespass and conversion.

Presently before this Court is Defendants' Motion for Summary Judgment, which seeks judgment with respect to Plaintiffs' due process and takings clauses claims. For the reasons set forth below, Defendants' motion is granted with respect to Plaintiffs' federal claims.

### RELEVANT FACTS

The following facts are gleaned from the parties' statements of material facts and

accompanying exhibits. As we note in further detail herein, the Court is frustrated by the parties' utter failure to comply with Local Rule 56.1, which outlines the requirements for summary judgment pleadings in this district. Additionally, as noted herein, the Court finds it disconcerting that both parties have not candidly set forth the undisputed facts. Because the parties have failed to dispute each others' statements of facts, both parties' facts are deemed admitted to the extent they are relied upon by the Court, and form the basis for the following factual summary.

Plaintiffs Richard and Laura Ostergren own two properties in Oak Lawn, Illinois, located at 9541 South McVicker Avenue and 9540 Southwest Highway (the "Subject Properties"). In early spring of 1999, Defendant Jeanne Foody Galzin, the Health and Sanitation Inspector for the Village, received several complaints about the Subject Properties. Accordingly, Galzin, who was responsible for pre-demolition activities and inspection decisions for the Village, inspected the Subject Properties. Galzin determined that the buildings on the Subject Properties were in violation of several building codes and warranted demolition pursuant to 65 ILCS 5/11–31–1(e).[1]

On May 24, 1999, Galzin sent Richard Ostergren ("Ostergren") separate notices informing him that each of the Subject Properties contains an open and vacant building that constitutes an immediate and continuing hazard, and that

> unless the building at or on the property is demolished, repaired, or enclosed and unless any and all hazardous, noxious, or unhealthy substances or materials are removed from the property within thirty (30) days following [Plaintiff's] receipt of this letter, so that the immediate and continuing hazard to the community no

longer exists, the Village of Oak Lawn intends to undertake such demolition, repair and/or clean up.

(R. 36–2, Pls.' Statement of Material Facts ¶ 7, Ex. 1, May 24, 1999 letters from Galzin to Ostergren.) Both letters referred to § 11–31–1(e) of the Illinois Municipal Code. In addition, Galzin enclosed a list of building code violations with each letter, and indicated that Ostergren should contact her with any questions.

On May 26, Galzin sent Ostergren two additional letters informing him that buildings located on the Subject Properties "were an immediate and continuing hazard to the surrounding community and that if they were not repaired within thirty days, the Village would demolish them." (R. 30, Defs.' Statement of Material Facts ¶ 5.) The May 26 letters also referred to § 11–31–1(e), and were sent with lists of building code violations identical to the lists sent with the May 24 letters.

Shortly thereafter, Plaintiffs received a "Notice to Demolish or Repair" from Galzin for each of the Subject Properties. Both notices explained that, pursuant to § 11–31–1(e), the Village found that these properties contain open and vacant buildings and constitute immediate and continuing hazards. The notices also provided that

> Unless the open and vacant building ... is demolished, repaired, or enclosed, and unless any and all garbage, debris, and other hazardous, noxious or unhealthy substances or materials are removed from the Property ... within thirty (30) days following the date of this Notice, so that an immediate and continuing hazard to the surrounding community and the public at large no longer exists, the building shall be demolished, repaired, or enclosed, and any garbage, debris, or

---

1. The Illinois Municipal Code authorizes municipalities to "demolish, repair, or enclose" a building three stories or less in height that is "open and vacant and an immediate and continuing hazard to the community in which the building is located." 65 ILCS 5/11–31–1(e) (West 2000). The Village adopted this provision as part of the Village Code. For the sake of convenience, both 65 ILCS 5/11–31–1(e) and the Village Code are referred to herein as "the Ordinance."

other hazardous, noxious, or unhealthy substances or materials shall be removed by the Village of Oak Lawn. Any and all costs and expenses incurred by the Village in relation to said demolition, repair, and/or clean-up shall constitute a lien against the Property.

(R. 36–2, Pls.' Statement of Material Facts ¶¶ 11, 12, Exs. 5, 6, May 28, 1999 notices to demolish or repair.)

Defendants also posted enlarged copies of the Notice to Demolish or Repair on the Subject Properties on May 28. Ostergren saw at least one of these notices before the demolition.[2] Defendants also published copies of the "notices of demolition" i.e., the Notice to Demolish or Repair, for each property in the *Daily Southtown* newspaper on May 28, 29, and 30. (R. 36–2, Pls.' Statement of Material Facts ¶ 13.)

After receiving the letters from Galzin, Ostergren "took steps to correct the violations that had been cited on his property, and made efforts to contact defendant Galzin in this regard." (R. 36–2, Pls.' Statement of Material Facts ¶ 19.)[3] One of the first conversations between Galzin and Ostergren occurred on June 29 at one of the Subject Properties, where Ostergren was working with a crew of employees to clean up the property. At that time, Galzin informed Ostergren that the siding on the McVicker property had been tested for, and contained, asbestos, and therefore he could not remove the siding. In addition, a police officer who was with Galzin instructed Ostergren and his crew that they were not to enter the buildings on either of the Subject Properties. At this time, Ostergren informed Galzin that he had an agreement to rent out the Subject Properties and that the lessee had agreed to make any necessary repairs. Ostergren also made an appointment to meet with Galzin the following day at 2:00 p.m. Subsequently, that meeting was cancelled and rescheduled for July 1.

After Galzin departed from Plaintiffs' property on June 29, Village employees arrived at the site to mark the utility lines for disconnection. The Village employees informed Ostergren that this is generally done when a property is scheduled for demolition. The following day, June 30, Ostergren contacted his attorney, Scott Ladewig, to discuss the disconnection of the utility lines. Ladewig contacted Galzin and asked why the lines were being disconnected. Galzin informed him that it was being done for safety reasons.[4]

---

2. In their Statement of Material Facts, Defendants misrepresent the testimony of Richard Ostergren in this regard. According to Defendants, Richard Ostergren testified that he saw the enlarged notices on both properties. (R. 30, Defs.' Statement of Material Facts ¶ 6 (citing R. Ostergren Dep. at 71).) However, Ostergren's actual testimony was that, while he saw at least one of the posted notices, he did not know whether he saw them on both properties. (R. Ostergren Dep. at 71.)

3. Plaintiffs have misrepresent their own evidence on several fronts. First, Plaintiffs claim that Ostergren first contacted Galzin by phone in June. (R. 36–2, Pls.' Statement of Material Facts ¶ 20.) However, Plaintiffs' own evidence contradicts their assertion. Pages 83 and 100 of Galzin's deposition transcript, which Plaintiffs cite in paragraph 23 of their Statement of Material Facts, reveal that the parties did not have any contact until they spoke in person at one of the Subject Properties the week of the demolition. Plaintiffs also misrepresent the evidence when they as-

sert that during this alleged telephone conversation, Galzin indicated that "there was a lot of clean up which needed to be done, and told Mr. Ostergren that he could contact her again when he was finished." (R. 36–2, Pls.' Statement of Material Facts ¶ 21 (citing R. Ostergren Dep. at 45–48).) Ostergren's actual testimony was that he could not recall exactly what was said, but rather "assumed" that they discussed what could be done to the properties. (R. Ostergren Dep. at 47.) Finally, the evidence cited by Plaintiffs does not support their assertion that Galzin affirmatively told Ostergren that he could contact her when he was done cleaning up the properties.

4. Relying on Ladewig's deposition testimony, Plaintiffs contend that when Ladewig asked Galzin why the utilities were being disconnected, she informed him that this "was done only for safety reasons and not for the purpose of demolition." (R. 36–2, Pls.' Statement of Material Facts ¶ 33 (citing Ladewig Dep. at 20).) Ladewig, however, did not testi-

On the afternoon of July 1, Ostergren met Galzin at her office and discussed the violations that had not yet been corrected at the Subject Properties.[5] Around the same time, the buildings on the Subject Properties were demolished. The Village asserts that it never promised or informed Plaintiffs that the demolition would not occur. (R. 30, Defs.' Statement of Material Facts ¶ 14.)[6]

On December 12, 1999, Plaintiffs filed a complaint, alleging that Defendants violated 42 U.S.C. § 1983 by depriving them of their right in property without due process of law. Plaintiffs also asserted state law claims for trespass and conversion. On March 14, 2000, Plaintiffs filed an Amended Complaint, which added counts for violations of the United States and Illinois Constitutions' takings clauses. On October 6, 2000, Defendants filed a motion for summary judgment asking this Court to grant judgment in their favor on Plaintiffs' due process and takings clauses claims, and to refuse to exercise supplemental jurisdiction over Plaintiffs' state law claims for trespass and conversion.

On October 17, this Court ordered Plaintiffs to respond to Defendants' motion by November 14, and ordered Defendants to reply by November 21. Despite this Court's clear instructions, on November 14, Plaintiffs submitted a pleading styled "Plaintiffs' Motion for Summary Judgment" requesting that the Court grant summary judgment in favor of Plaintiffs on liability. In support of their motion, Plaintiffs filed a Statement of Material Facts, and a Memorandum (1) in Support of Plaintiffs' Motion for Summary Judgment, and (2) in Response to Defendants' Motion for Summary Judgment. Plaintiffs did not, however, file a response to Defendants' statement of material facts.[7] Presently before this court is Defendants' motion for summary judgment.

## LEGAL STANDARDS

### I. Summary Judgment Pleadings

This Court previously noted, and it is worth repeating here, that we have seen a trend of poorly presented and argued summary judgment motions. *Malec v. Sanford,* 191 F.R.D. 581, 582 (N.D.Ill.2000). This case is no exception. We strongly urge the parties to review *Malec,* which clearly elucidates the obligations of the parties in summary judgment proceedings in this district. In addition, we remind the parties of the dire consequences of failing to comply with Local Rule 56.1.

■ The local rules serve an important function in structuring the summary judgment process. *Bordelon v. Chicago Sch.*

---

fy that Galzin said it was "not for the purpose of demolition." Plaintiffs also misrepresent Ladewig's deposition testimony when they state that, "Mr. Ladewig also asked defendant Galzin if the Village had made a final determination to demolish the properties, to which defendant Galzin responded no." (R. 36–2, Pls.' Statement of Material Facts ¶ 34 (citing Ladewig Dep. at 11).) Ladewig did not so testify.

5. Citing both Ostergren's and Galzin's depositions, Plaintiffs assert that the parties discussed "what corrections needed to be made to the properties." (R. 36, Pls.' Statement of Material Facts ¶ 41 (citing Galzin Dep. at 103–106).) However, the portion of Galzin's deposition transcript cited by the Plaintiffs reveals that they were not discussing the corrections that *still needed to be made,* but rather "what the violations were that *had not been*

corrected." (Galzin Dep. at 105.) (emphasis added).

6. Defendants claim that Plaintiffs knew that the Village would demolish the buildings on the Subject Properties. (R. 30, Defs.' Statement of Material Facts ¶ 11 (citing R. Ostergren Dep. at 58–59, 68–69).) However, the deposition testimony cited by Defendants only partially supports their claim. The deposition testimony indicates only that the first time Ostergren "suspected" there might be a demolition was when he saw the public works employees who were there to disconnect the lines. (R. Ostergren Dep. at 58–59, 68–69.)

7. In accordance with this Court's October 17, 2000 Order, we will treat the pleadings submitted by Plaintiffs on November 14 as Plaintiffs' response to Defendants' motion for summary judgment.

*Reform Bd. of Trs.*, 233 F.3d 524, 527 (7th Cir.2000). The Seventh Circuit explains that the local rules " 'assist the court by organizing the evidence, identifying undisputed facts, and demonstrating precisely how each side proposed to prove a disputed fact with admissible evidence.' Given their importance, we have consistently and repeatedly upheld a district court's discretion to require strict compliance with its local rules governing summary judgment." *Id.* (quoting *Markham v. White*, 172 F.3d 486, 490 (7th Cir.1999)).

The penalty for a movant's failure to submit a proper 56.1(a) statement is dismissal of the motion. The nonmovant's failure to file a proper response results in the admission of the movant's factual allegations, and often in summary judgment being granted in favor of the movant. *See Bordelon*, 233 F.3d at 528–29 (finding that the consequence of non-compliance, i.e., admission of the material facts, applies regardless of what contrary evidence is in the record); *Malec*, 191 F.R.D. at 584 (a nonmovant's failure to adhere to the local rules is equivalent to admitting the movant's case). Similarly, the movant's response to the nonmovant's 56.1(b) statement of additional facts must comply with the requirements of Rule 56.1(b)(3)(A). Failure to do so will result in the admission of facts set forth by the nonmovant in its 56.1(b)(3)(B) statement.

In the case at bar, Defendants filed a 56.1(a) statement.[8] Pursuant to Local Rule 56.1(b), Plaintiffs, the nonmovants, were required to file a response to Defendants' 56.1(a) statement. Plaintiffs failed to do so. Instead, Plaintiffs simply filed their own statement of material facts.[9] As a result, the factual allegations contained in Defendants' 56.1(a) statement are deemed admitted. Similarly, the facts contained in Plaintiffs' statement of facts also are deemed admitted because Defendants did not controvert Plaintiffs' statement of facts in their reply.

Despite the parties' failure to comply with Rule 56.1, and the resulting admission of both parties' factual assertions, this Court finds that Plaintiffs have not produced sufficient evidence to warrant a trial on their due process and federal takings clause claims.

## II. Summary Judgment Standards

Summary judgment is appropriate if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A genuine issue for trial exists only when "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court must view the evidence in a light most favorable to the nonmoving party and draw all inferences in the nonmovant's favor. *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.*, 40 F.3d 146, 150 (7th Cir.1994). However, if the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted. *Liberty Lobby*, 477 U.S. at 249–50, 106 S.Ct. 2505. Moreover, in considering a motion for summary judgment, a court need not assume the truth of a nonmovant's conclusory allegations on faith or scour the record to unearth material factual disputes. *Car-*

---

8. Defendants styled this pleading "Defendants' Rule 12(M) Statement of Material Facts in Support of Its [sic] Motion for Summary Judgment." The parties should note that Rule 12(M) has been reclassified as Rule 56.1(a) and Rule 12(N) has been reclassified as Rule 56.1(b).

9. In their statements of facts, the parties frequently misrepresent the underlying evidence, impeding this Court's ability to render judg-

ment. To the extent that the factual assertions contained in the parties' statements do not accurately reflect the underlying evidence, they will not be considered by this Court. *See Bordelon*, 233 F.3d 524, 528 ("the district court is entitled to limit its analysis of the facts on summary judgment to evidence that is properly identified and supported in the parties' statements.")

ter v. Am. Oil Co., 139 F.3d 1158 (7th Cir.1998). Ultimately, the Court must decide "whether the state of the evidence is such that, if the case were tried tomorrow, the plaintiff would have a fair chance of obtaining a verdict." *Palucki v. Sears, Roebuck & Co.,* 879 F.2d 1568, 1573 (7th Cir.1989).

With these standards in mind, we turn to Defendants' motion.

## ANALYSIS

### I. Procedural Due Process

The crux of Plaintiffs' § 1983 claim is that they were denied due process prior to the demolition of the buildings on the Subject Properties because they did not receive proper notice and an opportunity to be heard. (R. 6, Pls.' Am.Compl. ¶¶ 32, 33.) Defendants counter that they did not deprive Plaintiffs of due process because the notices they sent to Plaintiffs complied with § 11–31–1(e) of the Ordinance, and Plaintiffs had an opportunity to be heard pursuant to the Ordinance. Defendants argue that because Plaintiffs did not avail themselves of the opportunity to be heard, they waived their right to assert a due process claim.

■ To succeed on a claim of deprivation of procedural due process, a plaintiff must show that (1) a property or liberty interest was at stake; and (2) he was deprived of the interest without sufficient procedural protections. *Alexander v. Kennedy–King College,* No. 88 C 2117, 1990 WL 179691, *4 (N.D.Ill. Nov.2, 1990) (citing *Mathews v. Eldridge,* 424 U.S. 319, 332, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *Gaballah v. Johnson,* 629 F.2d 1191, 1202 (7th Cir.1980)). The parties do not dispute that Plaintiffs had a property interest in the buildings on the Subject Properties. Rather, the dispute is whether Defendants, acting pursuant to 65 ILCS 5/11–31–1(e), deprived Plaintiffs of this property interest without adequate process.

■ Due process is a flexible concept whose procedures depend on the particular circumstances of each case. *Doherty v. City of Chicago,* 75 F.3d 318, 323 (7th Cir.1996). Generally, due process requires notice and an opportunity to be heard at a meaningful time, and in a meaningful manner. *Fuentes v. Shevin,* 407 U.S. 67, 80, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *Buttitta v. City of Chicago,* 9 F.3d 1198, 1206 (7th Cir.1993); *McKenzie v. City of Chicago,* 973 F.Supp. 815, 817 (N.D.Ill.1997). However, providing the opportunity for a hearing does not mean that defendants are required to conduct a hearing absent a plaintiff's request. *Feliciano v. Dep't of Transp. of the State of Illinois,* No. 86 C 4476, 1987 WL 7459, *4 (N.D.Ill. Mar.5, 1987).

In the case at bar, Defendants acted pursuant to § 11–31–1(e) when they demolished the buildings on the Subject Properties. Plaintiffs do not claim that § 11–31–1(e) is invalid on its face. Rather, Plaintiffs challenge the constitutionality of the procedures used by the Village in carrying out demolitions pursuant to this section. Specifically, Plaintiffs claim that the notice they received pursuant to the Ordinance was inadequate to comport with due process, and that because the Village did not strictly comply with the Ordinance, the opportunity for a hearing provided therein did not satisfy due process. We address the adequacy of the notice first.

#### 1. Notice

■ In support of their motion for summary judgment, Defendants assert that they sent Plaintiffs all of the notices required under § 11–31–1(e), and that the notices themselves complied with due process. Plaintiffs respond that these notices were both procedurally as well as substantively deficient, and therefore did not satisfy the requirements of due process.

*a. Procedures for Issuing Notices Pursuant to § 11–31–1(e)*

First, Plaintiffs claim that Defendants did not follow specific procedural steps

required by the Ordinance. Section 11–31–1(e) authorizes a municipality to "expedite the removal of certain buildings that are a continuing hazard to the community in which they are located." In order to proceed with what is know as "fast track" demolition under this provision, the Village must first notify certain interested parties of the impending demolition. The notices must be issued in three forms—by a sign posted on the property, by a letter, and by publication of a notice in the newspaper. The posted notice

> shall be dated ... and shall state that unless the building is demolished, repaired, or enclosed, and unless any garbage, debris, and other hazardous, noxious, or unhealthy substances or materials are removed so that an immediate and continuing hazard to the community no longer exists, then the building may be demolished, repaired, or enclosed, or any garbage, debris, and other hazardous, noxious, or unhealthy substances or materials may be removed, by the municipality.

65 ILCS 5/11–31–1(e). The notice via letter shall state the intent of the municipality "to demolish, repair, or enclose the building or remove any garbage, debris, or other hazardous, noxious, or unhealthy substances or materials if that action is not taken by the owner or owners." *Id.* Finally, the notice published in the newspaper shall include "a statement that the property is open and vacant and constitutes an immediate and continuing hazard to the community, and ... a statement that the municipality intends to demolish, repair, or enclose the building or remove any garbage, debris, or other hazardous, noxious, or unhealthy substances or materials" if the owner fails to do so. *Id.*

In the case at bar, it is undisputed that Defendants issued the required notices prior to demolishing the buildings on the Subject Properties. On May 28, Defendants posted notices that contained the requisite language on both buildings, at least one of which Ostergren saw prior to the demolition. In addition, Defendants sent Plaintiffs letters dated May 24 and May 26 that clearly informed Plaintiffs of Defendants' intent to "demolish, repair, and/or clean-up" the property if Plaintiffs did not improve the property so that it was no longer an immediate and continuing hazard to the community. (R. 36–2, Pls.' Statement of Material Facts, Exs. 1–4, May 24, 1999 and May 26, 1999 letters from Galzin to Ostergren.) Finally, Defendants published notices that contained the requisite language in the local newspaper on May 28, 29, and 30.

Plaintiffs do not dispute that Defendants issued these notices. Instead, Plaintiffs claim that Defendants sent out their notices in a "haphazard manner, and not in accordance with that proscribed in the state statute." (R. 37, Pls.' Br. in Opp'n to Defs.' Mot.Summ.J. at 7.) Without citing any authority, Plaintiffs read several additional requirements into the Ordinance, and then argue that Defendants violated their due process rights because Defendants did not satisfy these additional requirements.[10] For example, Plaintiffs claim that the notices did not comply with the Ordinance because Defendants sent out the letters before posting the notices on the property, Defendants never followed up with "letters of intent," and Defendants sent letters that did not properly advise Plaintiffs of Defendants' intent. (R. 37, Pls.' Br. in Opp'n to Defs.' Mot. Summ.J. at 9.) The Court is not persuaded that the notices were deficient, especially given that Plaintiffs concede they received several notices from the Village, some of which included specific lists of code violations that detailed what needed to be repaired, and which clearly indicated Village's intent to "demolish, repair, and or

---

**10.** Plaintiffs' inclusion of the entire Ordinance in their brief does not advance their argument, especially given that the Ordinance itself does not require the Village to take these specific steps.

clean-up" in the absence of Plaintiffs doing so themselves.

Defendants have established that they issued all of the notices required under § 11–31–1(e). Moreover, Defendants have established that, at the very least, Plaintiffs were on notice that the buildings would be demolished, repaired, and/or cleaned-up if they did not correct the violations themselves. For their part, Plaintiffs have not come forward with any evidence that they were not put on notice, that they did not know the Village intended to demolish the buildings, or that the Village represented to them that they would not demolish the buildings. Simply put, Plaintiffs have not produced sufficient evidence to warrant submitting this issue to a jury. Thus, Plaintiffs' assertion that the notices they received were inadequate to comply with due process is without merit.[11]

### b. Substance of the Notices Issued by Defendants

■ Next, Plaintiffs claim that the notices issued by Defendants pursuant to § 11–31–1(e) did not comport with due process because they were vague. Specifically, Plaintiffs claim that the notices failed to disclose the Village's intent to demolish, and did not inform them of exactly what they needed to correct. Defendants argue that the issuance of notices to Plaintiffs was carried out constitutionally, and that the notices themselves were sufficient to comply with due process under the circumstances of this particular case. We agree.

It is undisputed that, in addition to receiving several of the notices issued by Defendants, Plaintiffs were aware, at the very least, of the possibility of demolition. In fact, while Ostergren was at one of the Subject Properties, Village employees arrived at the property to disconnect the utility lines, and informed Ostergren that

they only do this when a building is scheduled for demolition. In addition, after being put on notice of the impending demolition, Ostergren called his attorney Scott Ladewig to discuss what to do about the possible demolition. In fact, Ladewig testified that his client feared that the Village would knock down the buildings. (R. 28–2, Defs.' Mot.Summ.J. at 9 (citing Ladewig Dep. at 8–9).)

Plaintiffs do not deny these facts or offer evidence to dispute that they had actual knowledge of the impending demolitions. Nor do Plaintiffs claim that they did not understand the notices or the consequences of non-compliance. Even if they did, Plaintiffs had hired an attorney who was aware that the Village was acting pursuant to § 11–31–1(e), and who, ostensibly, could have read the Ordinance and explained Plaintiffs' options to them.

Considering all of the evidence presented by the parties, this Court finds that the notices satisfied due process. Thus, we turn to whether or not Plaintiffs were given an opportunity to be heard at a meaningful time in a meaningful manner.

### 2. Opportunity to Be Heard

■ Defendants contend that Plaintiffs had a meaningful opportunity to be heard pursuant to § 11–31–1(e), and that because Plaintiffs failed to avail themselves of this opportunity, they waived their right to claim a due process violation. Plaintiffs claim that because Defendants did not comply with the Ordinance, the opportunity for a hearing provided therein did not satisfy due process. Plaintiffs further claim that any waiver was obviated by Defendants' representation that Plaintiffs need not pursue formal procedures to forestall the demolition process.

The Ordinance provides that any person with legal or equitable interest in property

11. Because we find that the notices sent to Plaintiffs by Defendants complied with § 11–31–1–(e), we need not address Plaintiffs argument that the Village "only had authority to

demolish without a court order if it strictly complied with the statute." (R. 37, Pls.' Br. in Opp'n to Defs.' Mot.Summ.J. at 9.)

can file an objection in "an appropriate form in a court of competent jurisdiction" and that the municipality must halt any demolition, repair, enclosure or removal actions if such person has sought a hearing before a court and has served a copy of the complaint on the chief executive officer of the municipality. 65 ILCS 5/11–31–1(e). Thus, the procedure for obtaining a hearing is to "file [an] objection in an appropriate form in a court of competent jurisdiction." *Id.*

As previously indicated by this Court, Defendants have established that they complied with the notice requirements of § 11–31–1(e). As a result, Plaintiffs' assertion that because Defendants did not comply with the Ordinance, the opportunity for a hearing provided therein did not satisfy due process, is without merit.

The evidence shows that Plaintiffs had a meaningful opportunity to be heard, and that the proceedings for obtaining such a hearing were not unduly burdensome under the particular circumstances of this case. After receiving the several notices sent to them by Galzin, Plaintiffs had over thirty (30) days to read the Ordinance, which would have informed them of their ability to seek a hearing, and halt the demolition process. Plaintiffs needed only to file a complaint in a "court of competent jurisdiction," and serve a copy of the complaint on the chief executive officer of the municipality. 65 ILCS 5/11–31–1(e). Clearly, Plaintiffs had an opportunity to be heard—they simply did not take advantage of that opportunity.

Plaintiffs' claims are further belied by the fact that Ostergren is an experienced real estate agent, with over 20 years of experience in the field, the Ostergrens had sufficient funds to pay for any filing fees that they would have incurred in filing an objection, and they had hired an attorney who was aware of the Ordinance prior to the demolition. Given the facts of this case, the procedures outlined in § 11–31–1(e) did not unduly burden Plaintiff's right to a hearing.

Plaintiffs defend their failure to seek a hearing on the basis that Defendants led them to believe that they did not need to pursue formal procedures to forestall the demolition process. In a previous Opinion in this case, this Court noted that waiver would be obviated if, as Plaintiffs alleged, Defendants told Plaintiffs that the demolition would not occur and that they did not need to pursue pre-deprivation processes to forestall the demolition. (R. 13, July 27, 2000 Order.) However, Plaintiffs have failed to produce evidence that Defendants made such representations either to Plaintiffs or their attorney.

Plaintiffs also seem to suggest that they did not waive their right to a hearing because they took steps to correct the violations. Yet Plaintiffs fail to produce evidence that they corrected any of the violations included in the lists sent to them on May 24 and May 26. The only evidence Plaintiffs produce is that Ostergren went out to one of the Subject Properties, perhaps for the first time, on June 29, to "clean up" the property. This is a far cry from correcting the hazardous conditions cited by the Village, and is insufficient to support Plaintiffs' argument. As a result, Plaintiffs' failure to avail themselves of the opportunity for a hearing cannot be excused.

## II. Takings Clause

In their motion for summary judgment, Defendants also ask this Court to grant summary judgment in their favor on Counts IV and V of Plaintiffs' Amended Complaint. In these Counts, Plaintiffs claim that Defendants deprived them of their personal property and denied them just compensation in violation of the takings clauses of the Illinois Constitution (Count IV) and the United States Constitution (Count V).

In their Motion for Summary Judgment and Response to Defendants' Motion for Summary Judgment, Plaintiffs utterly fail to provide any analysis or authority to

support their takings clause claims. Regarding Plaintiffs' claim under the United States Constitution's Takings Clause, Plaintiffs cite no authority other than the Fifth Amendment itself. Plaintiffs discussion is limited to their claim that Defendants' actions are "a violation of the United States Constitution," (R. 37, Pls.' Br. in Opp'n to Defs.' Mot.Summ.J. at 16) and that "Defendants, through its [sic] demolition practices, deprived plaintiffs of their personal property and denied them any just compensation in violation of the Fifth Amendment to the United States Constitution" (*id.*). Plaintiffs conclude that, because the destruction of their property was undertaken pursuant to the Village's program, and no compensation was afforded to them, "it is clear that the defendants [sic] actions were an illegal taking" in violation of the United States Constitution. (*Id.*) That is the sum total of Plaintiffs' argument, and the Court is not persuaded.

 Caselaw makes clear that in order to state a prima facie takings claim, plaintiffs must allege that they have been divested of all their rights to use their property as a whole. *Nat'l Bank of Austin ATUT 5081 v. City of Chicago*, No. 94 C 3004, 1994 WL 319300, *2 (N.D.Ill. June 23, 1994) (citing *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 497, 107 S.Ct. 1232, 94 L.Ed.2d 472 (1987)); *see also Andrus v. Allard*, 444 U.S. 51, 65–66, 100 S.Ct. 318, 62 L.Ed.2d 210 (1979) ("At least where an owner possesses a full 'bundle' of property rights, the destruction of one 'strand' of the bundle is not a taking."). In this case, Plaintiffs allege that Defendants deprived them of the buildings on the Subject Properties only. Plaintiffs do not allege that they have been deprived of the Subject Properties in their entirety.

Plaintiffs bear the burden of proof on the federal takings clause claim. We find that Plaintiffs have not established any material issues of fact with respect to this claim. In fact, the Court concludes that the Plaintiffs have effectively waived this claim by failing to properly address it in response to Defendants' Motion for Summary Judgment.

 Moreover, the Court seriously questions whether Plaintiffs' federal takings clause claim satisfies the ripeness standard, as elucidated by the Supreme Court in *Williamson County Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985). The Seventh Circuit explains that, in *Williamson*, "the Supreme Court articulated a special ripeness doctrine for constitutional property rights claims which precluded federal courts from adjudicating land use disputes until: (1) the regulatory agency has had an opportunity to make a considered definitive decision, and (2) the property owner exhausts available state remedies for compensation." *Forseth v. Village of Sussex*, 199 F.3d 363, 368 (7th Cir.2000). Plaintiffs have failed to produce sufficient evidence to establish that their federal takings clause claim meets these threshold ripeness requirements.

Particularly troubling is the fact that Plaintiffs have produced no evidence that they have exhausted available state remedies. For example, Plaintiffs have failed to show that they pursued an inverse condemnation action under Illinois law. Such an action is "designed to compensate property owners who are harmed by a municipality's actions." *Covington Court, LTD. v. Village of Oak Brook*, No. 95 C 407, 1995 WL 257867, *2 (N.D.Ill.1995) (citing *Biddison v. City of Chicago*, 921 F.2d 724, 727 (7th Cir.1991)), *aff'd* 77 F.3d 177 (7th Cir. 1996). Nor have Plaintiffs established that they pursued any other state remedies prior to filing this lawsuit. Accordingly, we grant Defendants' Motion for Summary Judgment with respect to Plaintiffs' federal constitutional takings clause claim.

## CONCLUSION

For these reasons, we grant summary judgment in favor of Defendants (R. 28–1)

with respect to Plaintiffs due process (Count I) and federal takings clause (Count V) claims. These same reasons also compel this Court to deny Plaintiffs' Motion for Summary Judgment (R. 36–1) on liability. The Court declines to exercise supplemental jurisdiction over the remainder of the claims stated in Plaintiffs' Amended Complaint, i.e., Plaintiffs' state law claims (Counts II, III, and IV). The Clerk of the Court is instructed to enter judgment, pursuant to Federal Rule of Civil Procedure 58, in favor of Defendants on all of the federal claims asserted by Plaintiffs in this lawsuit. Lastly, this Court hereby denies both of the pending motions in limine of the parties (R. 24–1)and (R. 31–1). This last ruling is conditional in nature and remains free to be revisited by our respected state court colleague.